[No. F010674. Fifth Dist. Nov. 21, 1988.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
MICHAEL GRANILLO, Real Party in Interest.

COUNSEL

Gerald F. Sevier, District Attorney, Phillip J. Cline, Assistant District Attorney, James M. Kordell and Martin R. Malone, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Neal Pereira, Public Defender, Martin W. Staven and Charles Rothbaum, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**WOOLPERT, Acting P. J.**—By their petition, the People ask this court to direct the respondent court to vacate its Penal Code section 995[1] order dismissing a series of residential burglary charges. In the underlying cases, the real party in interest, Michael Granillo, was charged with seven burglary counts based on evidence he had entered the residence of an undercover police officer with the intent to either sell and conceal stolen property, attempt to sell and conceal stolen property or solicit another to receive stolen property. He was also charged with the target offenses.

Granillo was one of several defendants in similar actions charged with burglary arising out of the undercover operation. Many of those defendants, including Granillo, moved to dismiss the residential burglary counts pursuant to section 995. In ruling collectively on those motions, the trial court found: the undercover officer knowingly consented to the entry and to the sale of stolen property within the undercover officer's residence; and the crime of receiving stolen property was already completed at the time of entry into the residence. Upon review, we conclude the dismissal order was proper.

## FACTS[2]

In 1987, the Visalia Police Department antiburglary team established an undercover operation to purchase stolen property. Ricardo Cantu was hired in June 1987 as a Visalia police officer to participate in the undercover operation. Following conversations with members of the antiburglary team, Cantu moved into an apartment at 304 West School Street in Visalia. The state of California paid the rent for the apartment. Members of the team selected the West School apartment because they considered it a good location to meet with people who the department believed were involved in burglaries. It was Cantu's duty to live in the apartment so he would be available to purchase stolen property there. Cantu was officially on duty 24 hours a day.

Cantu and others in the department let it be known in the community that: he was in the apartment; and he was interested in purchasing stolen property, "[b]asically, anything that wasn't junk." Cantu also offered kickbacks to persons finding others who would sell stolen property to him.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] At the hearing on the section 995 motion, the parties stipulated the court could consider the transcripts from several preliminary hearings relative to the undercover officer's testimony. On this petition, however, the record is limited to the preliminary hearing transcripts in the two cases in which Granillo was charged.

At some point in time, apparently in late 1987 or early 1988, Granillo learned Cantu wanted to buy stolen property. Thereafter, on January 12, 1988, Granillo telephoned Cantu and said he had a converter box with a remote control and a chain saw which he would sell to Cantu. Granillo asked if Cantu was interested; the undercover officer replied yes. Cantu then asked Granillo to bring the items to his (Cantu's) apartment. At the apartment, Granillo agreed to sell him the property (which he admitted was stolen) for $80.

Thereafter, on six occasions between January 13 and February 3, 1988, Granillo went to the West School apartment where he was invited inside by Cantu. Once inside, Granillo offered to sell Cantu different pieces of stolen property.

## DISCUSSION

Respondent court found there was "duality of consent" by Cantu, that is, the undercover officer, in order to "capture criminals and stolen property," consented to entry into the apartment and to have sales of stolen property occur there. Based on these findings, the court ruled the residential burglary charges should be dismissed. In reaching this conclusion, the court analyzed three decisions, *People* v. *Pendleton* (1979) 25 Cal.3d 371 [158 Cal.Rptr. 343, 599 P.2d 649], *People* v. *Gauze* (1975) 15 Cal.3d 709 [125 Cal.Rptr. 773, 542 P.2d 1365], and *People* v. *Thomas* (1977) 74 Cal.App.3d 320 [141 Cal.Rptr. 340], on the question of consent in burglary.

Petitioner challenges the dismissal order on grounds: (1) the language of section 459 is sufficiently plain and unambiguous that the respondent court should not have engaged in judicial interpretation to dismiss the residential burglary counts; and (2) the opinions in *Gauze* and *Thomas* do not support the real party's position given the Supreme Court's subsequent, limiting language in *Pendleton*. Despite these arguments, we will conclude the respondent court properly dismissed the residential burglary counts.

A. *The Propriety of Statutory Interpretation.*

■ The burglary statute does appear plain and unambiguous on its face. Simply stated: Every person who enters any building with intent to commit any felony is guilty of burglary. (§ 459.) Therefore, it seems at first glance section 459 could be easily applied to the facts in this case. A reasonable trier of fact could believe Granillo entered the apartment with intent to sell stolen property. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 476 [62 Cal.Rptr. 581, 432 P.2d 197].) Accordingly, if we were to employ the

People's logic, we would conclude respondent court should have denied the section 995 motion. This, however, we cannot do.

In *People* v. *Barry* (1892) 94 Cal. 481, 482 [29 P. 1026], a case cited by petitioner, the court stated the language of section 459 was so plain and simple that rules of statutory construction were unnecessary. Yet, in spite of its conclusion, the *Barry* court interpreted the statute in response to an appellate contention. As the *Gauze* court would later explain: "[T]he court in *Barry,* by negative implication, substantiated the importance of determining the right of an accused to enter premises. When the defendant thief in *Barry* argued he had a right to be in the store, the court could have replied that his right to enter the store was immaterial. Instead the court declared, 'To this line of reasoning we can only say, a party who enters with the intention to commit a felony enters without an invitation. He is not one of the public invited, nor is he entitled to enter. Such a party could be refused admission at the threshold, or ejected from the premises after the entry was accomplished.' (*Id.* at p. 483.)" (*People* v. *Gauze, supra,* 15 Cal.3d at p. 713.)

Indeed, the *Gauze* court also interpreted the so-called clear and unambiguous statute. As discussed below, the *Gauze* court held a person could not burglarize his or her own home. Such a holding is noteworthy considering, under the People's logic in this case, a person could be found guilty of burglarizing his or her own home pursuant to the plain meaning of the statute.

The "plain meaning rule" is not an absolute rule of statutory construction. "Although enactments must ordinarily be construed in accordance with the plain and ordinary meaning of their words, the literal language of the measure may be disregarded to avoid absurd results and to fulfill the apparent intent of the framers. [*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 (149 Cal.Rptr. 239, 583 P.2d 1281).]" (*Lynch* v. *State Bd. of Equalization* (1985) 164 Cal.App.3d 94, 114 [210 Cal.Rptr. 335].)

Perhaps recognizing this principle of statutory interpretation, the state Supreme Court in *Gauze, supra,* 15 Cal.3d at page 717, held a person cannot burglarize his or her own home. To reach this holding, the court analyzed common law burglary and the changes effected by codifying the common law on burglary. (*Id.* at pp. 713-716.) It reasoned: "A burglary remains an entry which invades a possessory right in a building. And it still must be committed by a person who has no right to be in the building." (*Id.* at p. 714.)

Applying such reasoning, the court concluded the defendant's entry into his own apartment, even for a felonious purpose, invaded no possessory right of habitation; only the entry of an intruder could have done so. (*Ibid.*) A contrary conclusion, they explained, would be entirely inconsistent with the purposes of section 459. "As aptly articulated by the Court of Appeal in *People* v. *Lewis* (1969) 274 Cal.App.2d 912, 920 [79 Cal.Rptr. 650], 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.' Section 459, in short, is aimed at the danger caused by the unauthorized entry itself.

"In contrast to the usual burglary situation, no danger arises from the mere entry of a person into his own home, no matter what his intent is. He may cause a great deal of mischief once inside. But no emotional distress is suffered, no panic is engendered, and no violence necessarily erupts merely because he walks into his house. To impose sanctions for burglary would in effect punish him twice for the crime he committed while in the house." (*People* v. *Gauze, supra,* 15 Cal.3d at pp. 715-716.)

In light of the Supreme Court's disregard of the "plain meaning rule" in interpreting the burglary statute, and the rule permitting intent-effecting interpretation where the alternative could lead to results unintended by the framers, we find the respondent court could properly analyze section 459 and the case law interpreting it.

B. *Gauze, Thomas and Pendleton*

The People contend the *Gauze* opinion does not benefit Granillo's cause given the following language from *People* v. *Pendleton, supra,* 25 Cal.3d at page 382: "The question presented [in *Gauze*] was whether the defendant could be guilty of burglarizing his own home. We answered this question in the negative on the ground that one has an unconditional right to enter his own home, even for a felonious purpose. We did not overrule existing authority upholding burglary convictions in which there was consensual entry. *The law after Gauze is that one may be convicted of burglary even if he enters with consent, provided he does not have an unconditional possessory right to enter.*" (Italics added.)

The appellant in *Pendleton* was convicted of burglary as well as kidnapping and rape. He had entered an acquaintance's apartment during the very

early morning hours, took the young woman from her apartment and forcibly raped her twice. On appeal, he argued the trial judge should have instructed on unauthorized entry (§ 602.5) as a lesser included offense of the crime of burglary. The Supreme Court disagreed. Entry without consent was an element of unauthorized entry but not of burglary.

Citing *People* v. *Talbot* (1966) 64 Cal.2d 691, 700 [51 Cal.Rptr. 417, 414 P.2d 633], the court observed the entry need not constitute a trespass to support a burglary conviction. It then went on to say *Gauze* did not hold to the contrary. (*People* v. *Pendleton, supra,* 25 Cal.3d at pp. 381-382.)

We must acknowledge that the court in *Pendleton* gave its readers a mixed message. On the one hand, it relied on *Talbot, supra,* 64 Cal.2d at page 700, for the proposition the entry "need not constitute a trespass" to support burglary. Notably, the appellant in *Talbot* argued if a property possessor gives consent to an entry with the knowledge the person entering intends to commit a felony, there could be no burglary. The Supreme Court, however, determined it did not have to deal with the issue since there was evidence the consent had been withdrawn. (*Id.* at p. 701.) Thus, the *Talbot* court left open what appears to be the very issue posed in this case. On the other hand, the *Pendleton* court sought to limit *Gauze* to its express holding that a person could not be guilty of burglarizing his or her home.

Notwithstanding this arguable dichotomy in the *Pendleton* analysis, the opinion does not have the wide-ranging effect which the People suggest. There can be no argument with *Pendleton's* description of the law after *Gauze, so far as that statement goes.* A person may be convicted of burglary even if he or she enters with "consent." Ordinarily, that apparent consent to enter is nullified by the intent to commit a felony once inside the premises. (*People* v. *Barry, supra,* 94 Cal. at p. 483; *People* v. *Nunley* (1985) 168 Cal.App.3d 225, 232 [214 Cal.Rptr. 82].) The qualifying premise, however, is that the occupant who gives a consent to entry is either unaware of the visitor's felonious intent (such as the store owner in *Barry, supra*) or, if aware of the felonious intent, the occupant does not endorse it (see our discussion of *People* v. *Descheneau* (1921) 51 Cal.App. 437 [197 P. 126], *post*).

■ Such a scenario is quite different from the present situation. There was more than a simple uninformed consent to enter at issue in this case. Here, before Cantu ever met Granillo, members of the police department put the word out on the streets that Cantu was available at his apartment to deal in stolen property. He was interested in buying anything so long as it was not junk. The undercover officer then invited Granillo into the apartment. At that point, Cantu not only knew Granillo had property to sell him, he also fully anticipated it would be stolen property. Furthermore, at

the time of his entry, Granillo knew Cantu was aware of the felonious purpose and was indeed interested in buying stolen property.

*Pendleton's* characterization of the law did not take the present situation into account. Accordingly, *Pendleton* should not be read, as the People suggest, to limit the analysis in this case. The question thus becomes whether these circumstances should amount to a defense to burglary? We conclude the answer must be "yes."

As the court in *Gauze* explained, the burglary law is designed to protect a possessory right in property against intrusion and the risk of harm. (*Gauze, supra,* 15 Cal.3d at pp. 713-715.) Granillo was not an intruder, nor did any danger to personal safety arise from his mere entry. He entered, not only with the officer's informed consent, but also with his (Granillo's) own knowledge that Cantu was operating out of his apartment as a fence. Indeed, the officer did more than *consent* to Granillo's entry; he *invited* him to his apartment. The visit was fully orchestrated by the authorities in an effort to catch criminals in the act and recover stolen property. Thus, to say Granillo could be found guilty of burglary would be contrary to the primary basis of the burglary law.

The present fact pattern is distinguishable from situations where an occupant knows the entrant's criminal purpose but does *nothing to prevent the* entry. An example of such a situation can be found in *People v. Descheneau, supra,* 51 Cal.App. 437. There the defendant hid himself within a trunk which his confederate took to a storage company. The plan was for the defendant, once the trunk was placed in a storage vault, to free himself, collect goods from the vault for storage in the trunk, hide once again in the trunk and wait until the trunk was picked up the next day. The storage company manager learned of the plan and accepted the trunk for storage. A law enforcement officer then opened the trunk and arrested the defendant. The appellate court held the defendant committed burglary even though the proprietor, with knowledge of the defendant's purpose in entry, did nothing to prevent it. Here, by comparison, Granillo entered the apartment with knowledge of Cantu's informed consent.

A somewhat similar situation existed in *People v. Thomas, supra,* 74 Cal.App.3d 320, a case decided in reliance upon *Gauze* and before the publication of *Pendleton.* In *Thomas,* the defendant testified he was promised money and a job by the owner of a television shop if he (the defendant) would enter the shop and remove certain designated items. Following his conviction for burglary, the defendant in *Thomas* claimed the jury should have been instructed an entry for burglary purposes must be without consent. The appellate court agreed. In reliance upon *Gauze, supra,* 15 Cal.3d

at pages 713-714, the *Thomas* court held an entry into the possessor's premises for the purpose of carrying out the possessor's instructions is not burglary. (*People* v. *Thomas, supra,* 74 Cal.App.3d at p. 323.)

The People take exception to *Thomas* in much the same way they challenge the trial court's order here. They argue *Pendleton* does not support such a decision. Once again, *Pendleton* holds one may be guilty of burglary even if he or she enters with consent. Yet, *Pendleton* neither addresses the situation posed here and in *Thomas,* nor does it undermine the *Gauze* rationale regarding the purpose of the burglary law. In both the present situation and *Thomas* there is evidence of informed consent to enter coupled with the "visitor's" knowledge the occupant is aware of the felonious purpose and does not challenge it.

Finally, it goes without saying the police initiated the "burglary" in this case by their undercover operation and invitation to Granillo. This is not an argument for an entrapment defense, there being no evidence of impermissible pressure tactics employed by the police. Still, by their active participation, the police maximized the crime from merely receiving stolen property with the possibility of a state prison term ranging from 16 to 36 months, to residential burglary, a "serious felony" under section 1192.7, subdivision (c)(18), with the possibility of a state prison term ranging from 2 to 6 years and future prior serious felony conviction enhancement.[3] Still, the defendant's entry was neither an intrusion nor a "fundamentally deceitful act." (*People* v. *Collins* (1986) 42 Cal.3d 378, 396 [228 Cal.Rptr. 899, 722 P.2d 173].)

We affirm the respondent court's section 995 order dismissing the residential burglary counts. The petition for a peremptory writ is denied.

Martin, J., and Hamlin, J., concurred.

---

[3] As an aside, we observe had the police chosen a storefront for their operation the crime would have been reduced to a second degree burglary with a reduced prison term range and without the "serious felony" designation. The arbitrary nature of selecting the place from which to run the undercover operation suggests the arbitrariness of prosecuting the real party's entry.