**STATE of Minnesota, Appellant,**

v.

**Jeffrey William VOIGT, Respondent.**

**No. C0–92–67.**

Court of Appeals of Minnesota.

June 9, 1992.

Review Denied Aug. 4, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Scott A. Hersey, Isanti County Atty., Cambridge, for appellant.

John M. Stuart, State Public Defender, Susan Lynn–Paul Hauge, Asst. Public Defender, Minneapolis, for respondent.

Considered and decided by KALITOWSKI, P.J., and AMUNDSON and FOLEY *, JJ.

## OPINION

DANIEL F. FOLEY, Judge.

Respondent Jeffrey Voigt was charged with first-degree felony criminal damage to property in violation of Minn.Stat. § 609.-595, subd. 1 (1990), and reckless driving in violation of Minn.Stat. § 169.13, subd. 1 (1990). The omnibus court found that Voigt was subjected to custodial interrogation without being advised of his *Miranda* rights. It therefore suppressed Voigt's confession and dismissed both counts of the complaint without prejudice.

## FACTS

The facts are undisputed. At 5:18 a.m. on July 28, 1991, Deputy Sheriff Charles Larson responded to a call at a church near Cambridge, Minnesota. Larson inspected the church's interior and concluded that nothing was missing or damaged. The front and side doors of the church, however, were severely damaged. Damage to the property was estimated in excess of one thousand dollars.

Larson concluded that both entrances had been struck by a vehicle. Near the front entrance, he discovered tread marks from tires that were worn and mismatched. He noticed red paint marks on the door, apparently from the vehicle's fender. Larson concluded that a vehicle had backed into the double doors. At the side entrance, marks on the wall and doorway indicated that the same vehicle, driving forward, had struck the wall and frame, forcing the frame and door inward. Larson noticed a rubber bumper mark and red paint marks on the door. He also found a damaged rear taillight lens bearing a Ford logo, as well as fragments of a taillight lens. A local Ford dealership later identified the fragments as part of a 1977–80 Ford Fiesta automobile.

While on patrol the next night, Larson observed a red Ford Fiesta driving ahead of him. The rear of the car was dirty except for one clean taillight. Although the left taillight was working, the right taillight was not lit. Suspecting that this was the vehicle involved in the church vandalism, Larson stopped it at a clear, well-lighted place on Main Street, Isanti.

As Larson approached, he observed that the tires appeared to match the tread marks at the church; the right front fender was extensively damaged and, though otherwise dirty, it had a new amber reflector; and the fender had white paint smudges matching the church doors. While Larson knew he had the right car, he did not know whether he had the driver involved in the vandalism.

Larson approached the driver of the car, respondent Jeffrey Voigt, who made hand signals to Larson indicating that he was deaf. Larson directed Voigt to the back seat of his squad car. At no point did Larson give Voigt a *Miranda* warning. He then communicated with Voigt by means of written notes which read:

L: I want to talk to you about the damage to the Long Lake Lutheran Church Sunday morning.

V: (Voigt shrugged his shoulders).

L: Are you saying you know nothing about it?

V: So are you going to throw me in jail?

L: No—I want a written statement— then you can go.

On an official statement form, Voigt wrote,

On the way home from friends in cities I was feeling bad because I'm deaf and depressed so I did a stupid thing, driving into the building. I'll take full responsibility for the damage.

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn.Const. art. VI, § 2.

## ISSUES

1. Did the omnibus court clearly err in determining that Deputy Larson's questioning constituted custodial interrogation requiring a *Miranda* warning?

2. Did the omnibus court err in dismissing the complaint, without prejudice, upon suppression of the confession?

## ANALYSIS

### I.

When the state appeals a pretrial order in a criminal proceeding, this court will only reverse if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Lynch,* 477 N.W.2d 743, 745 (Minn. App.1991).

A *Miranda* warning is required if an individual is in custody when interrogated. *State v. Rosse,* 478 N.W.2d 482, 484 (Minn. 1991). While the state agrees that Larson's questioning constituted "interrogation," it argues the trial court erred in determining that Voigt was "in custody."

Persons temporarily detained pursuant to an ordinary traffic stop are not in custody for purposes of *Miranda. State v. Herem,* 384 N.W.2d 880, 883 (Minn.1986). To determine whether a defendant is "in custody," a court must examine,

> all of the surrounding facts to determine whether there is a formal arrest or restraints comparable to formal arrest * * * [A] person is "in custody" for purposes of *Miranda* if restrained to a "degree associated with formal arrest," and if that belief is objectively reasonable.

*Rosse,* 478 N.W.2d at 484 (citations omitted.)

Larson directed Voigt's attention to the damaged church doors, thereby indicating, unquestionably, that Voigt was the focus of his suspicion. At this point, no *Miranda* warning was required. *See Her-*

*em,* 384 N.W.2d at 884 n. 2 (custody, not focus of suspicion, is the test). Nor was a *Miranda* warning required when Voigt shrugged his shoulders and Larson wrote, "Are you saying you know nothing about it?" The fact that an officer consciously seeks to elicit incriminating statements and that the defendant was the focal point of the investigation does not automatically entitle the defendant to a *Miranda* warning. *Id.* 384 N.W.2d at 883.

Voigt then asked, "So, are you going to throw me in jail?" Larson replied, "No—I want a written statement—then you can go." Larson never indicated that Voigt was free to leave *before* giving a statement. Larson did not merely request a voluntary statement; in a very real sense, he conditioned Voigt's freedom on the statement.[1]

In *Rosse,* the supreme court stated that telling a defendant "she would be free to go, but only after everything was sorted out" did not constitute custody. It nonetheless formed one element of the court's holding that a custodial situation was present. *Rosse* 478 N.W.2d at 486; *see also State v. Moffat,* 450 N.W.2d 116, 118 (Minn.1990) (defendant asked if he was under arrest and officer replied, "No, you're being detained"). The deputy's reply in the present case is entitled to much greater weight than in *Moffat* or *Rosse* because in neither of those cases was the defendant's freedom *conditioned* upon the giving of a statement.

In addition, this dialogue occurred after Voigt had been placed in the back seat of a patrol car. Beyond the restrictive features of the patrol car's back seat, which although relevant do not in themselves create custody, no further restriction would have been necessary for Larson to transport Voigt to jail. *See Herem,* 384 N.W.2d at 883 (sitting in back seat of patrol car does not create custody). Because he was poised for and clearly concerned about a

---

1. "I want a statement—then you can go" can reasonably be construed to mean "if you give me a statement, then you can go." On this construction, Larson's initial negative reply

meant Voigt would not go to jail *if* he gave a statement—and, conversely (in light of the circumstances, if not in strict logic), that he would go to jail if he did not give a statement.

**796**

trip to jail, Voigt could reasonably have understood Larson's reply to mean that he would go to jail if he did not give a statement.

The omnibus court found that the nature of the interrogation and the officer's statement that the defendant had to write a statement in order to leave constituted a custody situation, thereby requiring a *Miranda* warning. In light of the totality of circumstances, we agree. The omnibus court therefore did not clearly and unequivocally err in suppressing the confession.

## II.

The state argues that, even without Voigt's confession, the omnibus court erred in dismissing the complaint for lack of probably cause.

At the omnibus hearing, the state conceded that the motion for probable cause would depend on the court's decision regarding the admissibility of the confession. On cross-examination, Larson testified that it was not until he received the handwritten statement that he thought he had the right driver. While the state offers additional evidence, this evidence was not made a part of the complaint and therefore is not relevant to a determination whether the state had probable cause to proceed against Voigt when it filed its complaint. *See* Minn.R.Crim.P. 2.01 (facts establishing probable cause must be set forth in or with the complaint). The omnibus court therefore did not clearly and unequivocally err in dismissing the complaint upon suppression of the confession.

We note that the omnibus court dismissed the complaint "without prejudice." If, as the state contends, it possesses new evidence sufficient to establish probable cause against Voigt, it is free to file a new complaint.

## DECISION

When Larson conditioned Voigt's freedom on his providing a statement, Larson's questioning became custodial interrogation which required a *Miranda* warning. The trial court therefore properly suppressed

Voigt's confession and dismissed both counts of the complaint without prejudice.

Affirmed.