[No. B098452. Second Dist., Div. One. Jan. 27, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
EDMOND JAMES RAMOS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication *except for footnotes 3 and 4 and part II.*

**COUNSEL**

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Pamela C. Hamanaka and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**VOGEL (Miriam A.), J.**—Is a dead man "temporarily absent" from his house? Since we doubt that he will ever return, we think not. We therefore reduce Edmond James Ramos's conviction of first degree burglary to second degree burglary and remand for resentencing.

FACTS

On November 23, 1994, Virgil Wagner died at home from natural causes. His daughter-in-law, Marilyn Ball, was notified of his death, and when she went to Wagner's house two days later, she found that a microwave and a VCR were missing. Although Ball locked the house when she left, there were at least two more unauthorized entries into the house and other items were taken. When the police investigated, they found Ramos's fingerprints inside Wagner's house. When he was arrested, Ramos told the police that he went to Wagner's house on November 23, knocked on the front door and, when no one answered, walked around to the back of the house. Since it

appeared that no one was home, Ramos decided to go in and take something he could sell to obtain money to buy drugs. Ramos broke a window, entered the house, walked by Wagner's bedroom, looked in and saw a body on the bed. The body did not move, so Wagner entered the bedroom to get a closer look. When he saw Wagner's stiff body and his face "turned to the left with the eyes open," Ramos ran out the door, grabbing the VCR on his way.

Ramos was charged with five counts of first degree burglary. At trial, the People presented evidence of the November 23 entry plus others occurring before and after Wagner's death. During argument, the prosecutor conceded the later entries were second degree burglaries but argued that the November 23 entry was a first degree burglary because the house was "occupied" until Wagner's remains were removed. The jury convicted Ramos of three counts, finding the November 23 entry was a first degree burglary and two other entries (after Wagner's death) were second degree burglaries. Ramos appeals.

DISCUSSION

I.

■ Ramos contends the evidence is insufficient to support his first degree burglary conviction because it shows that Wagner was dead at the time Ramos entered his house on November 23. We agree.[1]

To prove first degree burglary of an inhabited dwelling, the People must present evidence that the house is "currently being used for dwelling purposes, whether occupied or not." (Pen. Code, § 459.)[2] What this means is that a dwelling is inhabited if the occupant is absent but intends to return and to use the house as a dwelling. (*People* v. *Hernandez* (1992) 9 Cal.App.4th 438, 442 [11 Cal.Rptr.2d 739]; *People* v. *Cardona* (1983) 142 Cal.App.3d 481, 483 [191 Cal.Rptr. 109]; *People* v. *Jones* (1988) 199 Cal.App.3d 543, 546, 548 [245 Cal.Rptr. 85].) To put it plainly, a dead body is not using a house for a "dwelling" and there is no way to say that a dead man is going to return or that he has an "intent" of any kind. It follows that, at the time of Ramos's entry on November 23, the house was not occupied within the meaning of section 459.

---

[1] We reject as specious the People's argument that "it is conceivable that Wagner may have passed away after [Ramos] broke into the house but before [Ramos] went into Wagner's bedroom." The only evidence about Wagner's condition was the description given by Ramos to the police—that Wagner's body was "stiff" when Ramos saw him. If the People wanted to contest this point, they could have presented expert testimony to establish the time of death. On this record, however, the *only* evidence is that Wagner was already dead when Ramos entered the house.

[2] All section references are to the Penal Code.

We reject as metaphysical sophistry the Attorney General's suggestion that the house was inhabited because Wagner "went to sleep, fully intending to remain in his house." By the time Ramos got there, Wagner was dead and, to the best of our knowledge, unable to entertain any intent of any kind. The house was no longer occupied. (*People* v. *Hider* (1984) 135 Mich.App. 147, 152 [351 N.W.2d 905, 907] ["a house left unoccupied by its occupant's death is not an 'occupied' dwelling"]; *State* v. *Ward* (1989) 93 N.C.App. 682, 686 [379 S.E.2d 251, 253] [the inhabitant's death renders a dwelling uninhabited "since someone must 'live' in a dwelling for it to be 'inhabited' "]; *Keel* v. *State* (1975) 165 Ind.App. 579 [333 N.E.2d 328]; *Johnson* v. *State* (Fla.Dist.Ct.App. 1966) 188 So.2d 61.)

It follows that Ramos's first degree burglary conviction must be reduced to second degree burglary.*

## II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified by reducing Ramos's conviction of first degree burglary to second degree burglary and, as modified, is affirmed and remanded to the trial court for resentencing, with directions to not impose the two 5-year enhancements pursuant to section 667, subdivision (a), to reconsider Ramos's presentence conduct credits, to exercise the discretion granted by *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] and, after resentencing, to issue a corrected abstract of judgment.

Ortega, Acting P. J., and Masterson, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 23, 1997. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 300.