**STATE of Minnesota, Appellant,**

v.

**Terry Lamont EDWARDS, Respondent.**

No. C0–98–1636.

Court of Appeals of Minnesota.

March 2, 1999.

Michael A. Hatch, Attorney General, St. Paul, MN (for appellant)

Amy Klobuchar, Hennepin County Attorney, Beverly J. Benson, Assistant County Attorney, Minneapolis, MN (for appellant)

Mark S. Wernick, Wernick Law Office, Minneapolis, MN (for respondent)

Considered and decided by HARTEN, Presiding Judge, HUSPENI, Judge,* and HOLTAN, Judge.**

**OPINION**

HARTEN, Judge.

At an omnibus hearing, the district court dismissed for lack of probable cause a charge of burglary in the second degree, Minn.Stat. § 609.582, subd. 2 (1996) against respondent, finding that because the tenant of the burgled apartment was deceased, the apartment no longer was a "dwelling" within the statutory language. The district court also denied respondent's motion to suppress his statements to the police that respondent asserts were involuntary and obtained in violation of *Miranda.* The state appeals the dismissal of the second-degree burglary charge and respondent cross-appeals the denial of his suppression motion. Because we find the decedent's apartment to be a dwelling under the plain language of the statute, we reverse and remand the dismissal of the burglary charge. Because respondent's admissions were voluntary and there was no violation of *Miranda,* we affirm the district court's denial of respondent's suppression motion.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10

## FACTS

On April 1, 1998, a woman was murdered in her apartment. For the next five days, several people, including respondent, Terry Lamont Edwards, used her apartment as a place to smoke crack cocaine. On April 15, police discovered the woman's body hidden in the bedroom closet of her apartment.

On April 17, 1998, respondent approached the police. Respondent believed that he could trade information about the murder for money and favorable handling of an outstanding misdemeanor warrant, thus clearing his name. Two homicide officers interviewed respondent for approximately one and one-half hours. He was not read a *Miranda* warning and was not arrested or restrained in any way. At one point during the interview, however, an officer told him, "If you saw her dead * * * and you give us that information * * * you're probably going to walk out of here." At the conclusion of the interview, the police gave respondent $30 and deferred action on the arrest warrant.

On April 23, police arrested respondent on a different misdemeanor warrant and brought him to the same homicide officers. The officers intended to charge respondent with burglary but did not tell him that. One of the officers read respondent a *Miranda* warning because respondent was in custody. The officer then asked respondent to make a statement, and when respondent asked if he would be charged for being in the decedent's apartment, the officer reminded him "You told us that the other day, right? I mean, it's no secret." Respondent went on to answer the officer's questions, at one point receiving a second *Miranda* warning. The officer then arrested respondent.

## ISSUES

1. Was the decedent's apartment a dwelling within Minn.Stat. § 609.582, subd. 2, and § 609.581, subd. 3?

2. Was the April 17th interview in violation of *Miranda* or otherwise involuntary?

3. Did the respondent voluntarily waive his *Miranda* rights in the April 23rd interrogation?

## ANALYSIS

### 1. Status of the Apartment as a "Dwelling"

The district court ruled that there was no probable cause for the state's charge of burglary because respondent did not enter a "dwelling" under the statute. A dismissal for lack of probable cause is appealable if it is based on a legal determination. *State v. Ciurleo*, 471 N.W.2d 119, 121 (Minn.App. 1991). Our review is de novo. *See e.g., State v. Diedrich*, 410 N.W.2d 20, 22–23 (Minn. App.1987). A burglary conviction will not be sustained where the building is not within the statutory definition. *State v. Shore*, 289 Minn. 302, 307, 183 N.W.2d 776, 780 (1971).

Respondent was charged with second degree burglary, defined by statute as:

> [W]hoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, commits burglary in the second degree * * * if: the building is a dwelling.

Minn.Stat. § 609.582, subd. 2 (1996). A dwelling is defined as "a building used as a permanent or temporary residence." Minn. Stat. § 609.581, subd. 3 (1996).

When interpreting statutes, we must ascertain and effectuate the intent of the legislature. Minn.Stat. § 645.16 (1998). If a statute is free from ambiguity, we examine only its plain language. *See Homart Dev. Co. v. County of Hennepin*, 538 N.W.2d 907, 912 (Minn.1995). The fundamental rule is to "look first to the specific statutory language and be guided by its natural and most obvious meaning." *Heaslip v. Freeman*, 511 N.W.2d 21, 22 (Minn.App.1994), *review denied* (Minn. Feb. 24, 1994). Because we are obliged to "decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities[,]" we address the issue of statutory interpretation. *State v. Hannuksela*, 452 N.W.2d 668, 673–74 n. 7 (Minn.1990).

Both respondent and the state apparently assume that Minn.Stat. § 609.581, subd. 3, should be interpreted to mean "dwelling

means a building [that is currently being] used as a permanent or temporary residence [by someone]."

■ We recognize that in interpreting statutes, "[w]ords and phrases are construed according to the rules of grammar." Minn. Stat. § 645.08(1) (1998). The statutory words, "used as a permanent or temporary residence," are a participial phrase, modifying "building." The phrase does not indicate a tense for "used"; rather, "used" has no tense. *Commonwealth v. McHugh*, 406 Pa. 566, 178 A.2d 556, 559 (1962), interpreted the phrase, "[m]aintaining the facilities used in such [public utility] service."

> [T]he word 'used' is a participial adjective which has no fixed meaning in terms of time * * * [and] can sound in the past, present, or future tense. * * * [It] is frequently resorted to for such descriptive purposes even though the article being described is not at the moment in actual use in any respect.

*Id.*

■ Respondent argues that "[p]enal statutes are to be strictly construed with all reasonable doubts concerning legislative intent to be resolved in favor of the defendant." *See State v. Wagner*, 555 N.W.2d 752, 754 (Minn.App.1996). But when we apply the rules of grammar to a statute we do strictly construe it; our analysis of the definition of dwelling comports with this canon.

Respondent also argues that *State v. Kowski*, 423 N.W.2d 706, 710 (1988), requires that for a building to be a dwelling, an occupant must have an intent to return and that the decedent here could not form the requisite intent to return. *See also People v. Ramos*, 52 Cal.App.4th 300, 60 Cal.Rptr.2d 523, 524 (1997), ("a dead body is not using a house for a dwelling and there is no way to say that a dead man * * * has an intent of any kind."), *review denied* (Cal. Apr. 23, 1997). But *Kowski* is distinguishable; its requirement that a building occupant must have an intent to return is used to distinguish between buildings that are residences, be they temporary or permanent, and buildings that are abandoned. *See Kowski*, 423 N.W.2d at 710 ("[r]egardless of the length of time an owner

is absent * * * it remains a dwelling if the owner does not intend to permanently abandon it."). Here, decedent did not abandon her apartment and, as a tenant, could not cause the apartment to be abandoned for residential purposes.

■ We conclude that a building is a dwelling within the meaning of section 609.581, subd. 3, when used as a temporary or permanent residence in the immediate past as long as it has not been abandoned, as required by *Kowski*. Decedent's apartment had immediate past residential use. We reverse the district court's dismissal of the charge of second degree burglary and remand it for trial.

## 2. April 17 Police Interview

### a. *Miranda*

■ Police must give a *Miranda* warning if they interrogate an individual in custody. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

> The right to a *Miranda* warning attaches only during custodial interrogation. The determination of whether a suspect is in custody is an objective inquiry—would a reasonable person in the suspect's situation have understood that he was in custody? If a suspect has not yet been arrested, a district court must examine all of the surrounding circumstances and evaluate whether a reasonable person in the suspect's position would have believed he was in custody to the degree associated with arrest. An appellate court reviews a district court's findings of fact for clear error. It makes an independent review, however, of the district court's determination regarding custody and the necessity of a *Miranda* warning.

*State v. Miller*, 573 N.W.2d 661, 670 (Minn. 1998) (citations omitted). Where an interrogation is videotaped, "there is no real dispute * * * concerning the facts," and we will independently review whether a suspect or witness was in custody at the time of the inter-

rogation. *State v. Wiernasz*, 584 N.W.2d 1, 4 (Minn.1998).

On review, we conclude that respondent voluntarily came to the police station to discuss what he knew about the decedent and her apartment and that he did this in hope of being rewarded. We agree with the district court that the interview was "non-coercive and smacked of voluntariness" and "free of the pressure and verbal judo sometimes used in homicide investigations." A reasonable person would not have believed himself to be in custody, nor did respondent; he dwelled on getting cash and relief from his warrant.

Respondent argues that despite the noncustodial atmosphere, the interview was custodial because he was subject to an arrest warrant. But the cases he cites do not support the conclusion that the mere existence of an arrest warrant, without more, necessarily makes an interview custodial. Moreover, these cases are distinguishable. *See State v. Malik*, 552 N.W.2d 730 (Minn.1996) (defendant held to be in custody after being searched, put in the back of a squad car, and not told he was free to go); *State v. Hawkins*, 27 Wash.App. 78, 615 P.2d 1327 (1980) (defendant who went to police to surrender on robbery warrant, was patted down for weapons, and had an arrest warrant filled out, held to be in custody). In the instant case, respondent had a misdemeanor arrest warrant and wanted to exchange his knowledge of the decedent and her apartment for cash payment and relief from the warrant. He was not arrested, did not believe he would be arrested, and he was paid; *Malik* and *Hawkins* do not apply.

Respondent also argues that because his freedom was conditioned on his cooperation, the interrogation was custodial. *See State v. Voigt*, 486 N.W.2d 793, 795–96 (Minn. App.1992) (officer telling suspect in patrol car that suspect could not go until suspect gave a statement implicating himself held to be custody for purposes of *Miranda* ), *review*

*denied* (Minn. Aug. 4, 1992). Respondent is correct that the officer implied that if respondent gave the information, they would not arrest him. But *Voigt* is distinguishable. Considering the totality of circumstances, the implication of arrest was in an environment where the officers made it clear that respondent would not be arrested. Respondent voluntarily approached police to sell information; he was neither a murder suspect nor otherwise implicated in the victim's murder. And in contrast to *Voigt*, the police did not condition his liberty on his willingness to implicate himself.[1]

### b. Whether Statements Were Voluntary

Respondent argues that even if he was not in custody, due process prohibits the use of his confession at trial because his statements were not voluntary. A statement is voluntary

absent a showing of coercive police activity. The Fourteenth Amendment's voluntariness standard is identical to that employed to determine the voluntariness of a *Miranda* waiver. A district court assesses voluntariness by examining the totality of the circumstances. The requisite factors include the defendant's age, maturity, intelligence, education, experience, and the ability to comprehend; the adequacy or lack of a warning; the length and legality of the detention; the nature of the interrogation; and whether the defendant was denied access to family and friends or deprived of physical needs. When reviewing a district court's conclusion, an appellate court must make an independent determination based on the totality of the circumstances as to whether a defendant's statement was voluntary.

*Miller*, 573 N.W.2d at 673.

The totality of the circumstances reveals that respondent was in his 30s, reasonably intelligent, and understood what was happen-

1. Because we conclude that respondent was not in custody during the interview, we do not address his argument that the police could not alter the custodial nature of the interview.

ing. He was never deprived of physical needs and was provided coffee and cigarettes. The nature of the interrogation was non-coercive; he was not handcuffed, threatened, cajoled, or placed under arrest. He had extensive experience with the criminal justice system, having had numerous previous convictions. We agree with the district court that his admissions were voluntary.

Respondent argues that the conditioning of his release upon giving information rendered his admissions involuntary. In support, he cites *State v. Cash*, 391 N.W.2d 875, 881 (Minn.App.1986) (statement found involuntary where suspect feared that if he stopped answering questions or asked for an attorney he would be jailed and police threatened incarceration unless he finished the interview). But respondent was never in fear of being jailed, the entire interview was taped, and police did not imply promises. *Cash* does not support respondent's arguments; his admissions were voluntary.

### c. April 23 Interrogation: *Miranda* Waiver

Respondent argues that the waiver of his *Miranda* rights at the April 23 interrogation was involuntary because the police used deception.

> [When] the defendant seeks suppression of a confession on the ground that the confession was involuntary, the state has the burden of proving voluntariness by a fair preponderance of the evidence.
>
> * * * *
>
> The appellate court is not bound by the trial court's determination of whether or not the confession was voluntary. Rather, its duty is to independently determine, on the basis of all factual findings that are not clearly erroneous, whether or not the confession was voluntary.

*State v. Thaggard*, 527 N.W.2d 804, 807 (Minn.1995) (citations and quotations omitted). There is no fact question here, and we review the facts independently. *Id.* We examine all relevant factors. *Id.* at 808. *See*

*Miller*, 573 N.W.2d at 673 (listing relevant factors).

■ Respondent alleges deception, a factor to be considered along with all other factors. *See Thaggard*, 527 N.W.2d at 810 ("lying to a suspect as to the strength of the state's case against him generally is not by itself enough to render a confession involuntary"). In addition to the consideration of other factors, a confession is not involuntary unless there is evidence that the suspect's will was overborne by coercive police conduct. *Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987).

■ The totality of the circumstances shows that respondent was in his 30s, reasonably intelligent, and understood what was happening. He received two *Miranda* warnings and was never deprived of physical needs. The nature of the interrogation was non-coercive; he was not handcuffed. He has had extensive experience with the criminal justice system and there was no equivocation in his waiver of his rights. Finally, the deception of which respondent complains was insubstantial. While the officers did not tell respondent that his previous admissions might not be admissible in court, they were not required to do so. *See Oregon v. Elstad*, 470 U.S. 298, 316–18, 105 S.Ct. 1285, 1296–97, 84 L.Ed.2d 222 (1985) (concluding that police need not give additional warning when prior statement was inadmissible). Furthermore, respondent was under arrest, the police never told him that they would release him from custody, or that they would not charge him with burglary. We conclude that respondent's *Miranda* waiver was voluntary.

Finally, the respondent argues that if we conclude that the April 17 admissions were involuntary or taken in violation of *Miranda*, then the April 23 admissions must be suppressed. Because we have not so concluded with respect to the April 17 admissions, we need not address suppression.

### DECISION

Because the apartment where the decedent was murdered was a dwelling under the

burglary statute, there was probable cause to charge respondent with burglary. Respondent's April 17th admissions were noncustodial and voluntary. Respondent voluntarily waived his *Miranda* rights at the April 23rd interrogation.

**Affirmed in part, reversed in part, and remanded.**