Filed 12/5/14  P. v. Figueroa CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E061026 |
| v. | (Super.Ct.No. RIF1305754) |
| BEATRIZ LILIANA FIGUEROA, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Reversed.

Paul E. Zellerbach, District Attorney, and Matt Reilly, Deputy District Attorney, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

The People appeal after the trial court dismissed the information as to three of the charges stated against defendant and respondent Beatriz Liliana Figueroa.  The People

1

contend that the trial court erred in dismissing the charges, which were supported by sufficient evidence adduced at the preliminary hearing. We reverse.

## FACTS AND PROCEDURAL HISTORY

The preliminary hearing evidence showed that victim Brian Erman owned a two-story home where he lived with his wife and son. In approximately December 2010, Erman hired defendant as a house cleaner. Defendant was to do "deep cleaning" in the home once a month. Erman paid defendant $100 for each cleaning. He would leave the money on the kitchen counter.

Defendant normally would telephone during the first week of the month to arrange a date for the cleaning with Erman's wife. On the scheduled day, Erman would admit defendant to the house, usually between 8:00 and 9:00 a.m. No one else was in the house at that time. Erman did not give defendant a key to the house. He would typically leave for work about 15 minutes after defendant had arrived, and he instructed defendant how to arm the alarm system before she left.

Starting in about May 2012, Erman's 16-year-old son kept some money in a box on the dresser in his bedroom. Erman would put cash into the box from time to time, so his son would have spending money. Erman never told defendant what was in the box, never gave defendant permission to open the box, and never gave defendant permission to take any money from the box. At some point, Erman's wife and son told Erman that they suspected defendant had taken money from the son's box.

2

The next time defendant was scheduled to clean the house, on March 7, 2013, Erman counted the money in his son's box before defendant arrived. There was $120 in the box. Erman let defendant into the house, as usual, and then went to work while defendant was cleaning the house. When Erman arrived home from work later that day, $60 was missing from the box. Erman was not aware of anyone else having been in the house that day. When Erman arrived home, the alarm system was properly armed, and no one else was there. At that point, Erman definitely suspected that defendant was taking the money.

The following month, Erman set up a similar test. On April 11, 2013, Erman put a specific amount of money into the box, four $20 bills. Then he let defendant into the house to clean and left for work. When Erman arrived home, $20 was missing from the box.

Erman then consulted Officer David Dopson; Dopson had been Erman's customer and had purchased a motorcycle from Erman in the past. Erman asked Officer Dopson's advice about what to do next. On Officer Dopson's advice, Erman installed a video surveillance camera in his son's bedroom. The camera maintained a view of the box on his son's dresser. The camera was motion activated, and would come on when some activity took place in the room.

On May 9, 2013, Erman turned the camera on before defendant came to clean. Erman also removed his son's money from the box, and placed $121 of his own money into the box. When defendant arrived at the house as scheduled, Erman admitted her in

the usual manner, and shortly thereafter left for work. When Erman arrived home, he counted the money in the box, and found that $36 was missing. The surveillance camera had captured three segments of video recording, which Erman proceeded to review. The first segment showed defendant opening the box as she dusted around it. The second segment showed defendant counting the money in the box, and taking some of it and setting it on top of the dresser. The third video showed defendant replace the top on the box, take the cash from the top of the dresser, and walk away.

After these events, Erman went to Officer Dopson and filed a report with the police. Officer Dopson telephoned defendant and explained that he was calling about the reported thefts. Defendant admitted committing a theft and said she was sorry. Officer Dopson asked defendant to come to the police station to turn herself in. When defendant arrived at the station, Officer Dopson read or recited *Miranda*[1] warnings to defendant; defendant waived her rights and agreed to talk to the police. During the interview, defendant admitted taking money from the Erman home on two separate occasions, once in April and once in May 2013. Defendant said she took the money because she had medical bills she needed to pay.

Defendant was charged in a criminal complaint with one count of burglary, based upon the videotaped incident of May 9, 2013. At the preliminary hearing, the People orally amended the complaint, informing defendant that the People intended to prove up

---

[1] *Miranda* v. *Arizona* (1966) 384 U.S. 436.

4

charges of burglary and of theft as to each of the three incidents, in March, April, and May 2013. The magistrate held defendant to answer on misdemeanor theft charges as to all three incidents, and on felony burglary charges—entry with intent to steal—as to the incidents of April and May 2013, because the theft in March 2013 indicated that defendant entered the home in April and May with the intent to repeat the theft.

After this ruling, the People filed an information alleging two counts of burglary, one for each of the incidents in April and May 2013, and three counts of receiving stolen property, one for each of the incidents in March, April, and May 2013.

Defense counsel filed a motion to dismiss as to all counts. As to the counts of receiving stolen property, defendant urged that she was not properly committed by a magistrate, as she was not held to answer on those specific charges. She specifically argued that the offense of receiving stolen property requires possession of the property in question as an element of the offense, but that defendant was not found in possession of any of the stolen money. Defendant conceded that the order holding her to answer for charges of theft was proper, but contended that conviction of receiving stolen property is precluded when a defendant is found to be the actual thief (citing *People v. Ceja* (2010) 49 Cal.4th 1, 4).

As to the burglary counts, defendant argued that the evidence was insufficient to hold her to answer. Defendant relied on *People v. Felix* (1994) 23 Cal.App.4th 1385 and *People v. Superior Court* (*Granillo*) (1988) 205 Cal.App.3d 1478, for the proposition that knowingly inviting a potential criminal onto the premises for purposes of encouraging

5

commission of the crime negates burglarious intent. Defendant also argued that the evidence, particularly the video evidence of the taking of the money in May 2013, showed hesitation on defendant's part, indicating that the thefts were "crime[s] of opportunity," and not indicative of an already formed intent to steal.

The People opposed the motion. The People pointed out, as to counts 3, 4, and 5 (receiving stolen property), Penal Code section 739 provides that the district attorney may properly file an information alleging any offense or offenses shown by the evidence. The evidence adduced at the preliminary hearing was sufficient to support a finding of the elements of receiving stolen property: (1) defendant received, concealed or withheld stolen property from the owner (defendant did so here because she stole the money); (2) defendant knew the property had been stolen (defendant here knew the property was stolen because she stole it herself); and (3) defendant knew of the presence of the property (defendant was aware of the presence of the money she stole, because she had stolen it). The defense had conceded that the evidence was sufficient to support a holding order on three counts of theft; the identical evidence would also support a charge of receiving stolen property. The stolen property need not be found on the defendant's person, as the defense motion had insinuated. Rather, the elements of proof require only a showing that the accused possessed the stolen property at some time. The People had provided sufficient evidence for that inference by virtue of the evidence showing that defendant had stolen the money.

The People also contested defendant's assertion that she could not be convicted of receiving stolen property if she were the actual thief. To the contrary, the law proscribes being convicted of *both* offenses, but the information in this case did not charge defendant with both the theft of the money and receiving the money as stolen property.

With respect to the burglary counts, the People argued that the evidence was sufficient to hold defendant to answer on the charges as to the April and May incidents. Before March 2013, Erman suspected that defendant was stealing money from the box in his son's bedroom. Erman set up a test on March 7, 2013. On that occasion, Erman counted the money before and after defendant was in the home. Before defendant arrived, there was $120 in the box. Later, when Erman came home, $60 was missing. The security alarm had been set, and no one else was in the house on that date until Erman returned home. Defendant's theft on March 7, 2013, is evidence of a common plan or scheme to steal money from the box in April and May 2013. Defendant also admitted to the police that she took the money in April and May because she needed to pay medical bills. The evidence is fully adequate to hold defendant to answer on a charge that she entered the home in April and May 2013 with a preconceived intent to steal.

The People also argued that the victim's inviting defendant into the home was not a bar to prosecution. The cases cited by defendant involved undercover officers pretending to be fencers of stolen goods, who invited a potential criminal onto the premises for the purpose of engaging in felonious activity. Under those circumstances,

7

"an entry into the possessor's premises for the purpose of carrying out the possessor's instructions is not burglary." (*People v. Thomas* (1977) 74 Cal.App.3d 320, 323.) The victim here did voluntarily admit defendant to the premises, but did not do so for the purpose of having her commit a theft. Defendant was invited to clean the house, and she was paid for that work. Defendant was never given permission or instructed to take money other than her wages, which were typically left on the kitchen counter.

The trial court denied defendant's motion to dismiss as to the burglary counts, which related to the incidents of April and May 2013. The trial court granted the motion, however, as to the receiving stolen property counts. The court stated, "although I have a pretty strong hunch that, you know, she was the one stealing money, and the money was missing and that's what caused the homeowner to be suspicious of her, I don't think there's enough there to create a strong suspicion that she's the one who took it. And she probably took it, but it could have been the [son] or one of his friends, and the [son] is just covering up, trying not to let [Erman] know how much he's spending. There's alternatives here. [¶] So I don't have that strong suspicion, and I don't think it was reasonable for the Court that heard the Preliminary Hearing to have a strong suspicion because I don't think there's substantial evidence to prove 3, 4 and 5. Not a strong suspicion. So I'm granting the [motion to dismiss] on 3, 4 and 5."

The People have appealed the order of dismissal.

8

## ANALYSIS

### I. Standard of Review

"In determining if charges in an information can withstand a motion under [Penal Code] section 995, neither the superior court nor the appellate court may reweigh the evidence or determine the credibility of the witnesses. [Citations.] Ordinarily, if there is some evidence in support of the information, the reviewing court will not inquire into its sufficiency. [Citations.] Thus, an indictment or information should be set aside only when there is a total absence of evidence to support a necessary element of the offense charged. [Citations.] [¶] 'Although there must be some showing as to the existence of each element of the charged crime [citation] such a showing may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate.' [Citation.] 'Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information.' [Citations.] Thus, the ultimate test is that ' " '[*a*]n *information will not be set aside or prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.*' " ' [Citation.] [¶] We review the evidence in support of the information to determine whether as a matter of law it is sufficient, not whether the trial court's ruling was reasonable. [Citations.]" (*People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226, original italics.)

II. The Evidence Was Sufficient to Support Three Allegations of Receiving Stolen Property

Defendant's motion to dismiss conceded that the evidence was sufficient to hold defendant to answer for three counts of petty theft. In reliance on *People v. Ceja*, *supra*, 49 Cal.4th 1, defendant argued that, because an accused may not be convicted of both theft and receiving stolen property as to the same property, and because, when an accused has been improperly convicted of both, the theft conviction takes precedence over the receiving stolen property conviction, then holding an accused to answer on theft charges precludes the prosecution from charging counts of receiving stolen property in lieu of theft charges as to the same property. In other words, if the evidence supports a charge of theft, "that theft trumps the 496 [receiving stolen property] . . . ."

Defendant's argument misconstrues the meaning of *Ceja*. The *Ceja* court did not hold that an accused may not be charged with receiving stolen property as to certain property, if the evidence shows that the accused was the actual thief. Rather, the common law rule, now embodied in Penal Code section 496, subdivision (a), precludes *dual conviction* of both theft and receiving stolen property as to the same property. However, it does permit "a 'thief in fact' to be convicted of receiving the stolen property, so long as he or she is not also convicted of the theft." (*People v. Ceja*, *supra*, 49 Cal.4th 1, 6.) "[W]hether theft or receiving is the 'greater' or 'lesser' crime is a matter that the Legislature has generally committed to the discretion of the prosecutor. Receiving stolen property may ordinarily be charged either as a misdemeanor or a felony, at the

10

prosecutor's election. In any case, the prosecutor has the discretion to decide which offenses to charge. The courts do not generally supervise these 'purely prosecutorial function[s].' [Citations.]" (*Id.* at p. 7.) It was within the prosecutor's discretion to elect to charge defendant with three counts of receiving stolen property, as felonies, rather than three counts of misdemeanor petty theft.

The only remaining issue is whether there was some evidence to support a finding as to the essential elements of a receiving stolen property offense. Defendant may be held to answer on a charge of receiving stolen property if the evidence at the preliminary hearing supports probable cause to believe that defendant (1) withheld stolen property from the owner, (2) knew that the property was stolen, and (3) knew of the presence of the property. (See CALCRIM No. 1750.)

As to the incident of May 2013, the surveillance video showed defendant opening the box, selecting a quantity of money from the box and setting it aside, and then returning to take the money she had set aside. Defendant clearly withheld the property from the owner, she obviously knew it was stolen, because she had stolen it herself, and she knew of its presence in her possession, also because she had stolen it herself.

The incidents of March and April 2013 followed a similar pattern, although those incidents were not recorded on video. In each of the three incidents, defendant was admitted to the house to clean. Erman counted the money in the box before defendant came. Money was missing when the victim came home. In the meantime, the security system had been armed, and no one else was recorded by the system as coming into the

11

house, except that, on one occasion, Erman's son had come home and gone out again. Both the son and the wife denied taking the money, and in fact they had brought their suspicions to Erman's attention. The manner of perpetration was the same in all three incidents. The trial court's hyperskepticism, that there was nothing other than a "strong hunch" that defendant had taken the money, was belied by the actual evidence. Defendant herself admitted taking money on two occasions (April and May), and she was filmed taking money in May. Defendant also admitted a motive for taking the money: to pay medical bills. It had to be more than mere coincidence that money went missing precisely on the dates when defendant was the only non-family member admitted to the home.

Drawing every rational inference in favor of the information, the evidence was sufficient to support a rational belief that defendant committed three acts of receiving stolen property. The trial court improperly dismissed the charges of receiving stolen property in counts 3, 4, and 5.

DISPOSITION

The evidence at the preliminary hearing was sufficient to support a rational ground for assuming that three offenses of receiving stolen property had been committed, and that defendant had committed them. The decision to charge three counts of receiving stolen property rather than three counts of petty theft was a matter left to the prosecutor's discretion. An accused who is a principal in the theft may, even according to the terms of

12

Penal Code section 496, be convicted of receiving stolen property; only dual conviction is precluded.

The trial court's order dismissing the three counts of receiving stolen property is reversed; the trial court is directed to reinstate the charges as to counts 3, 4, and 5 of the information.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:


RAMIREZ
P. J.


MILLER
J.

13