**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1031**

Judy Brown,
Appellant,

vs.

Judith M. Lee,
Respondent.

**Filed February 17, 2015**
**Reversed and remanded**
**Schellhas, Judge**

Dakota County District Court
File No. 19HA-CV-13-2836

Robert M. McClay, McClay • Alton, P.L.L.P., St. Paul, Minnesota (for appellant)

Craig A. Brandt, Snyder & Brandt, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Smith, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

**S Y L L A B U S**

A district court does not abuse its discretion by granting equitable relief to a party with unclean hands if the party has purged herself of her adverse equity.

**O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges the district court's summary-judgment dismissal of her contribution claim against respondent. We reverse and remand.

## FACTS

In 2005, Gordon Brown personally guaranteed the debt of Weeres Industries Corp. (WIC) to Peoples National Bank of Mora, including future debt. In 2006 and 2009, Peoples made loans to WIC. In 2009, Judith Lee personally guaranteed the debt of "WEERES INDUSTRIES, INC." (WII) to Peoples.

In January 2010, Peoples sued "[WIC] a/k/a [WII]," Gordon Brown, Lee, and numerous other business entities for the debt of WIC. Peoples alleged that "[WIC] a/k/a [WII]" had defaulted on its loans and that Gordon Brown and Lee had breached their guaranties. In March 2010, Peoples and all defendants except Lee entered into a forbearance agreement, and Lee executed a confession of judgment that Peoples could file in district court against any defendant that defaulted under the forbearance agreement. Gordon Brown defaulted. Before entry of judgment against him, Gordon Brown petitioned for dissolution of his marriage to appellant Judy Brown. In October 2010, the Browns dissolved their marriage. The dissolution judgment incorporated the terms of a marital termination agreement, under which Gordon Brown transferred substantially all of the Browns' assets to Judy Brown while retaining sole responsibility for their debts. *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 58, 64 (Minn. 2014).

In September 2011, the district court entered judgment against Gordon Brown for his default under the forbearance agreement, and Peoples sued the Browns for fraudulent transfer. A jury found that the Browns had violated the Minnesota Uniform Fraudulent Transfer Act by fraudulently conveying property with the intent to hinder creditors. In

2

November 2012, the district court entered judgment against the Browns, voiding the fraudulent transfers to the extent necessary to satisfy Peoples's claim of $324,833.03.[1] On December 14, 2012, under power of attorney from Gordon Brown, Judy Brown assigned to herself Gordon Brown's right of contribution that he "may have" against Lee, arising out of Lee's personal guaranty of WII's debt to Peoples. On December 18, 2012, Gordon Brown died.

In April 2013, Judy Brown sued Lee, alleging that Judy Brown had paid Peoples $280,000 "representing monies owed on [WIC's] Notes" and that Lee, as a coguarantor, was jointly and severally liable for one-half that amount, "approximately $140,000 and any additional sums she may pay to Peoples." Lee denied liability, counterclaimed, and moved for summary judgment on Judy Brown's contribution claim and partial summary judgment on her counterclaim for indemnification of legal expenses. The district court granted the motion, dismissed Judy Brown's contribution claim, granted partial summary judgment to Lee on her indemnification counterclaim, and denied Judy Brown's request for permission to move for reconsideration.

This appeal follows.

---

[1] The district court further voided the fraudulent transfers "to pay $60,000 to the Kanabec County District Court to be held in escrow to be applied towards any . . . awards of attorney's fees," enjoined the Browns "from the further disposition of the assets and property fraudulently transferred pursuant to [the Browns]' Marital Termination Agreement until [Peoples] c[ould] obtain full and complete recovery of its claim," and placed "[a] levy of execution . . . on the assets and property . . . that remain in [the Browns]' possession."

**ISSUES**

I.       Is Judy Brown entitled to seek contribution from Lee as a coguarantor?

II.     Does the doctrine of unclean hands bar Judy Brown's contribution claim?

**ANALYSIS**

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Citizens State Bank*, 849 N.W.2d at 61; *see also* Minn. R. Civ. P. 56.03. "[Appellate courts] review de novo a district court's grant of summary judgment" and "view the evidence in the light most favorable to the party against whom summary judgment was granted to determine whether there are any genuine issues of material fact and whether the district court correctly applied the law." *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014). "[Appellate courts] may affirm a grant of summary judgment if it can be sustained on any grounds." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012).

I.

"Contribution is an equitable remedy that allows one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear." *In re Individual 35W Bridge Litig.*, 806 N.W.2d 811, 815 (Minn. 2011) (quotation omitted). Because contribution is an equitable remedy, a more deferential standard of review than de novo may be applicable when the district court has balanced the equities and determined not to award equitable relief. *See RAM Mut. Ins. v. Rohde*, 820 N.W.2d 1, 6 n.3 (Minn. 2012).

But in this case, a more deferential standard of review is not applicable because, without balancing the equities, the district court concluded that Judy Brown's contribution claim fails as a matter of law because Judy Brown and Lee do not have common liability. *See id.* at 3–4, 6 n.3 (stating that, on appeal from summary judgment, standard of review more deferential than de novo was not applicable when district court determined as a matter of law that plaintiff could not maintain subrogation action).

"Contribution requires, first, a common liability of two or more actors to the injured party, and second, payment by one of the actors of more than its fair share of the common liability." *City of Willmar v. Short-Elliott-Hendrickson, Inc.*, 512 N.W.2d 872, 874 (Minn. 1994); *see Engvall v. Soo Line R.R.*, 632 N.W.2d 560, 568 (Minn. 2001) ("The very essence of the action of contribution is common liability." (quotation omitted)). "Common liability exists when both parties are liable to the plaintiff for the same damages, even though their liability may depend on different legal theories." *Willmar*, 512 N.W.2d at 874. "[T]he nature of the common liability is of secondary importance to the fact of common liability itself." *Id.*

*Right of contribution of coguarantors*

The Minnesota Supreme Court has recognized a "well established rule which gives a right of contribution from his cosureties to a surety who has paid more than his proportion of the common liability."[2] *Nat'l Sur. Co. v. Becklund*, 169 Minn. 177, 178, 210 N.W. 882, 883 (1926); *see Wilkin Cty. v. First State Bank of Rothsay*, 170 Minn. 115,

---

[2] "'Surety' includes a guarantor or other secondary obligor." Minn. Stat. § 336.1-201(b)(39) (2014).

119, 212 N.W. 183, 185 (1927) ("If a surety is compelled to pay more than his share he may enforce contribution from the others."); *Estate of Frantz v. Page*, 426 N.W.2d 894, 902 (Minn. App. 1988) ("Generally, a coguarantor is not liable for more than his pro-rata share of [a] debt, absent an agreement to the contrary."), *review denied* (Minn. Sept. 16, 1988); *see also Halpern v. Rosenbloom*, 459 F. Supp. 1346, 1354 (S.D.N.Y. 1978) ("[E]quity implies a contract between co-guarantors and an action for contribution is based on that contract," and "as between the co-guarantors, no consideration is required to support an action for contribution."); 23 Samuel Williston, *A Treatise on the Law of Contracts* § 61.64 (4th ed. 2002) ("The right to contribution may frequently be given by express contract or by a contract implied in fact, but the existence of the right does not depend on such a contract."). The Wisconsin Supreme Court has stated that the right of contribution is not dependent on "whether the sureties are jointly and severally bound, or only severally; or whether their suretyship arises under the same obligation or instrument, or under divers[e] obligations or instruments, if all the instruments are for the identical debt." *Kafka v. Pope*, 533 N.W.2d 491, 495 (Wis. 1995) (quotation omitted).

*Common liability of Lee and Judy Brown*

The district court concluded that Judy Brown and Lee do not have common liability. The court reasoned that Judy Brown was not personally liable to Peoples for Gordon Brown's original debt and that her obligation to Peoples "stem[med] only from receiving funds fraudulently." Although Judy Brown was not personally liable to Peoples for Gordon Brown's original debt, we disagree that her contribution claim therefore fails as a matter of law. If Lee intended to guarantee the debts of WIC, Lee and Gordon Brown

6

had common liability as coguarantors because WIC's default on its loans from Peoples triggered Peoples's right to enforce both Lee's and Gordon Brown's personal guaranties. Based on that alleged common liability with Lee, Gordon Brown assigned to Judy Brown any right of contribution from Lee. Additionally, although Judy Brown's liability to Peoples arose out of the Browns' fraudulent transfer, her liability is directly related to Gordon Brown's original debt to Peoples.

Without citation to any authority, Lee argues that Gordon Brown's assignment to Judy Brown is invalid because, when the assignment was made, Gordon Brown had no right of contribution to assign. Lee argues that Gordon Brown had no right of contribution to assign because Judy Brown, not Gordon Brown, paid Peoples and because the assignment preceded any payment to Peoples. We decline to address these arguments based on Lee's waiver. She did not present the arguments to the district court, and the court did not address them. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)). Moreover, "[a]n assignment of error based on mere assertion and not supported by any argument or authorities in [a] brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." *Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971).

Even if not waived, Lee's arguments would fail on their merits. *See Wilkie v. Becker*, 268 Minn. 262, 266, 128 N.W.2d 704, 707 (1964) (acknowledging precedent that courts of equity have upheld "assignments of mere expectancies and possibilities of the

7

future acquisition of the thing assigned" (quotation omitted)); *Mut. Ben. Life Ins. Co. v. Canby Inv. Co.*, 190 Minn. 144, 151, 251 N.W. 129, 133 (1933) (providing that "[c]ontingent interests, expectancies, and things resting in mere possibility only are assignable"). In this case, although Gordon Brown's right to contribution had not yet matured, his assignment nonetheless was valid as to the expectation or possibility of a right of contribution.

We conclude that Judy Brown, as Gordon Brown's assignee, may have a right of contribution against Lee, as a coguarantor. Genuine issues of material fact exist regarding whether Gordon Brown and Lee shared a common liability to Peoples as coguarantors of WIC's debt. The district court therefore must resolve Judy Brown's claim regarding the alleged scrivener's error in Lee's guaranty and, if that claim is resolved in favor of Judy Brown, determine whether Judy Brown paid more than her fair share of any common liability to Peoples.

*Alleged scrivener's error in Lee's guaranty*

Lee argues in the alternative that she did not have common liability with Gordon Brown because she and Gordon Brown guaranteed the debt of different business entities, WII and WIC, respectively. Citing *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 803 N.W.2d 916, 924−25 (Minn. App. 2011), *rev'd on other grounds*, 825 N.W.2d 695 (Minn. 2013), Lee further argues that Judy Brown has waived, by failing to raise in her principal brief, any arguments regarding a scrivener's error in Lee's guaranty. But Lee's reliance on *Bolduc* is misplaced. Unlike in *Bolduc*, Judy Brown addressed the scrivener's-error issue in her reply brief after Lee raised the issue in her responsive brief.

8

We therefore do not consider the issue waived. *Cf. Wood v. Diamonds Sports Bar & Grill, Inc.*, 654 N.W.2d 704, 707 (Minn. App. 2002) ("If an argument is raised in a reply brief but not raised in an appellant's main brief, and it exceeds the scope of the respondent's brief, it is not properly before [an appellate] court and may be stricken from the reply brief."), *review denied* (Minn. Feb. 26, 2003).

Without citation to legal authority, Lee implicitly argues that to prove common liability, Judy Brown must seek reformation of Lee's guaranty. "Reformation is an equitable remedy that is available when a party seeks to alter or amend language in a contract so that the contract reflects the parties' true intent when they entered into the contract." *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011). Reformation of a contract is appropriate when:

> (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Id.* at 865 (quotation omitted). "[T]he rule prohibiting the admission of parol evidence to vary the terms of a written contract does not prevent proof of fraud or mistake." *Aronovitch v. Levy*, 238 Minn. 237, 246, 56 N.W.2d 570, 576 (1953).

Lee argues that Judy Brown waived any right to seek reformation of Lee's guaranty because Judy Brown's counsel confirmed before the district court that Judy Brown was not seeking reformation of Lee's guaranty. Indeed, Judy Brown's counsel stated at the summary-judgment hearing that Judy Brown "doesn't seek reformation of

9

[Lee's] personal guaranty." But counsel also stated, "All [Judy Brown] asks the Court and the fact-finder to do here is make a determination of what the parties meant. She needs to show nothing more than . . . Lee is obligated for the same debt as the debt [Judy Brown] paid as directed by the jury and Judge Pugh."

We are not persuaded that Judy Brown must seek reformation of Lee's guaranty to prove common liability. In *Lenning v. Retail Merchants' Mut. Fire Ins. Co.*, the Minnesota Supreme Court considered a case in which a contract of insurance misidentified the insured—"Seaman-Martin Co."—as "Seaman & Martin." 129 Minn. 66, 66–67, 151 N.W. 425, 425 (1915). The supreme court reasoned:

> An error or an ambiguity in the name of the assured is open to oral proof as to the party intended to be protected. . . . [A]n error of no consequence in the name of the insured should not defeat a contract of insurance. . . . Especially ought this to be so when the name used is applicable to no one in existence.

*Id.* at 68–69. In concluding that the contract's misidentification of the insured did not preclude an action by the insured's assignee for loss coverage under the terms of the contract, the court cited authorities including a treatise that "assert[s] that a misnomer of a corporation in a contract is not fatal, if it appears from the instrument itself or is shown by parol that the corporation is intended." *Id.* at 66–67, 69.

Substantial persuasive authority is consistent with *Lenning. See Humble Oil & Refining Co. v. Jaybert Esso Serv. Station, Inc.*, 30 A.D.2d 952, 952 (N.Y. App. Div. 1968) (determining that misnomer of principal obligor did not relieve guarantors of their obligations under guaranties where intent of guarantors was evident and misnomer was not misleading); *see also* 27 Williston, *supra*, § 70.20 ("Where circumstances justify

10

reformation of a writing, a court has the discretion—without a preliminary decree of reformation—to give effect to the transaction as if the failed writing had been reformed."); *cf. Quebecor World (USA), Inc. v. Harsha Assocs., L.L.C.*, 455 F. Supp. 2d 236, 241 (W.D.N.Y. 2006) ("[T]he general rule is that where there is a misnomer of the corporation in the contract or obligation sued on, the corporation may sue or be sued, and recovery may be had by or against it, in its true and proper corporate name." (quotation omitted)); *Nw. Mut. Life Ins. Co. v. Germania Fire Ins. Co.*, 40 Wis. 446, 451 (1876) (determining that policy's omission of word in plaintiff's name did not relieve defendant of its obligation under policy, where "[t]here [wa]s not the slightest doubt that the parties to the policy inserted the clause for the benefit of the plaintiff").

Judy Brown presented evidence and apparently persuaded the district court that the identification of WII in Lee's guaranty was a scrivener's error.[3] We conclude that the evidence, viewed in the light most favorable to Judy Brown, creates a genuine issue of material fact about whether Lee and Gordon Brown guaranteed the same debt to Peoples and, if so, whether Judy Brown paid more than a fair share of the debt.

## II.

Lee argues that, because contribution is an equitable remedy, Brown should not be allowed to pursue her contribution claim because she has unclean hands, evidenced by

---

[3] Judy Brown presented evidence to the district court that WII was dissolved more than 16 years before Lee signed her guaranty and that Lee owned 40.91% of Clearwater Marine Inc., which owned 100% of WIC. Judy Brown also provided to the court a copy of Peoples's complaint against various business entities, Gordon Brown, and Lee, in which Peoples treated WIC and WII as the same entity. The district court said: "[Judy Brown] has convincingly argued that [Lee]'s guaranty with [WII], an entity that was dissolved several years ago, was a scrivener's error."

11

Peoples's fraudulent-transfer judgment against her. Under the doctrine of unclean hands, "he who seeks equity must do equity, and he who comes into equity must come with clean hands." *Hruska v. Chandler Assocs., Inc.*, 372 N.W.2d 709, 715 (Minn. 1985) (quotation omitted). "A party 'may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others.'" *Peterson v. Holiday Rec. Industs., Inc.*, 726 N.W.2d 499, 505 (Minn. App. 2007) (quoting *Johnson v. Freberg*, 178 Minn. 594, 597–98, 228 N.W. 159, 160 (1929)), *review denied* (Minn. Feb. 28, 2007). "'The [unclean-hands] doctrine does not apply where the relief sought by the plaintiff and the equitable right claimed by the defendant belong to or grow out of two entirely separate and distinct matters or transactions.'" *Id.* (quoting *Lindell v. Lindell*, 150 Minn. 295, 298−99, 185 N.W. 929, 930 (1921)). The "adverse equity" of the party seeking an equitable right

> must grow out of the very controversy before the court or out of such transactions as the record shows were part of its history, or where it is so connected with the cause in litigation as to be presented in the pleadings and proofs, with full opportunity afforded to the plaintiffs to explain or refute the charges.

*Id.* (quotation omitted). Courts of equity apply the doctrine of unclean hands "not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245, 54 S. Ct. 146, 148 (1933).

12

In this case, Judy Brown claims that she paid Peoples after the district court entered the fraudulent-transfer judgment against her. Assuming without deciding that Judy Brown has unclean hands as a result of the fraudulent-transfer judgment entered against her, this case presents the question of whether a district court abuses its discretion by granting equitable relief to a party with unclean hands if the party has purged herself of her adverse equity. *See Citizens State Bank v. Raven Trading Partners, Inc.*, 786 N.W.2d 274, 277 (Minn. 2010) (reiterating "that granting equitable relief is within the sound discretion of the trial court and only a clear abuse of that discretion will result in reversal" (quotation omitted)). We conclude that a district court does not abuse its discretion by granting equitable relief to a party with unclean hands if the party has purged herself of her adverse equity.

"*A wrong which has been righted* may not be pleaded against a party to a suit in equity, on the theory that the party charged therewith is in court with 'unclean hands.'" 2 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 399 (5th ed. 1941); *see Loy v. Alston*, 172 F. 90, 91–92, 95 (8th Cir. 1909) (determining that plaintiff was not barred by doctrine of unclean hands when defendant had recovered from plaintiff for his misconduct); *Gen. Electric Co. v. Klein*, 129 A.2d 250, 252 (Del. Ch. 1956) ("The repentant sinner, especially where he has been duly punished, is not unwelcome in equity."); *Sixty-Third & Halsted State Sav. Bank v. Martin*, 38 N.E.2d 989, 990, 992 (Ill. App. Ct. 1942) ("The fraud as to the [plaintiffs] is purged by the payment of the judgment."); *Stewart v. Jackson*, 635 N.E.2d 186, 189–90 (Ind. Ct. App. 1994) ("Indiana has recognized the ability to purge oneself of wrongdoing, which effectively restores the

13

right to equitable relief."); *Hlista v. Altevogt*, 210 A.2d 153, 156 (Md. 1965) ("[I]mpropriety which has been purged is not, under the [unclean-hands] maxim, fatal to plaintiff's suit."); *Randles v. Hanson*, 258 P.3d 1154, 1157, 1161 (N.M. Ct. App. 2011) ("[W]hatever inequitable conduct [plaintiff] engaged in . . . was remedied by the judgment [defendant] obtained against her."); *Beavers v. Walters*, 537 N.W.2d 647, 651 (N.D. 1995) ("One who purges himself of his wrongdoing will have his right to relief restored."); *McNair v. Benson*, 126 P. 20, 24 (Or. 1912) (determining that plaintiff who confessed his misrepresentations and effected settlement "purged his conduct, as far as he was capable of cleansing it," and "should not now be denied relief[] on the ground that he does not come into a court of equity with clean hands"); *Huntzicker v. Crocker*, 115 N.W. 340, 341–42 (Wis. 1908) (determining that plaintiff was not equitably barred from seeking dower when plaintiff's fraudulent conveyance to daughter was voided).

In *Senn v. Youngstedt*, 589 N.W.2d 314, 316 (Minn. App. 1999), *review denied* (Minn. May 18, 1999), a case involving the right of contribution, a defendant argued that contribution should be disallowed because of the plaintiff's unclean hands. In dicta, we suggested that the timing of a party's wrongdoing may affect its right to seek equitable relief, noting that "all allegations of unclean hands ar[o]se only from [plaintiff]'s actions after the original judgment was entered." 589 N.W.2d at 316. But we did not reach the question of whether the plaintiff's hands were clean. *Id.* at 316−17.

While we have not found a Minnesota case that specifically addresses unclean hands based on entry of a fraudulent-transfer judgment, the Minnesota Supreme Court has been reluctant to apply the unclean-hands doctrine when the party asserting it has

14

failed to show harm resulting from the complained-of conduct. *See Hruska*, 372 N.W.2d at 715 (declining to apply unclean-hands doctrine when plaintiff's underpayment of wages to defendant was misconduct that did not result in substantial harm to defendant and when defendant had since recovered from plaintiff); *Fred O. Watson Co. v. U.S. Life Ins. Co.*, 258 N.W.2d 776, 778 (Minn. 1977) (declining to apply unclean-hands doctrine when plaintiff made misrepresentation to defendant but defendant's reliance was not induced by misrepresentation). The record before us includes no claim by Lee, or evidence that establishes, that Judy Brown's unclean hands prejudice Lee. Any such fact-dependent claims are appropriately resolved in the district court.

## D E C I S I O N

A genuine issue of material fact exists regarding whether Lee and Gordon Brown guaranteed the same debt. If the district court determines that Judy Brown is entitled to contribution from Lee, the court in its discretion may grant Judy Brown equitable relief if it finds that she has purged any adverse equity. We reverse the district court's grant of summary judgment to Lee on Judy Brown's contribution claim and remand this case to the district court for further proceedings consistent with this opinion.

**Reversed and remanded.**