# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-2152

David Kroona,
Respondent,

vs.

Frank Dunbar, et al.,
Appellants,

Padun GV, LLC,
Defendant.

**Filed August 17, 2015**
**Affirmed in part, reversed in part, and remanded**
**Larkin, Judge**

Hennepin County District Court
File No. 27-CV-12-8054

Michael Mergens, Marshall S. Lichty, EntrePartner Law Firm, PLLC, Bloomington, Minnesota (for respondent)

James C. Diracles, Justin P. Short, Ashleigh M. Leitch, Best & Flanagan LLP, Minneapolis, Minnesota (for appellants)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

## S Y L L A B U S

When determining whether a co-obligor has paid more than his fair share of a common liability for the purpose of contribution, co-obligors who are insolvent or beyond the court's jurisdiction must be excluded from the fair-share calculation.

# O P I N I O N

**LARKIN**, Judge

Appellants, respondent, and six additional guarantors signed four separate agreements guaranteeing payment of a $5.2 million bank loan to a real-estate company. After the real-estate company defaulted, the bank's assignee sued all of the guarantors for the unpaid loan balance. Appellants settled with the assignee for $150,000. After the assignee obtained a favorable judgment, respondent settled with the assignee for $400,000. Later, respondent sued appellants for contribution. The district court granted partial summary judgment for respondent, concluding that respondent and appellants share a common liability under the guaranties. Later, the district court determined that respondent paid more than his fair share of the common liability and granted judgment against each appellant for one-half of respondent's overpayment. Because the district court correctly concluded that the parties share a common liability, we affirm in part. But because the district court erred by failing to determine whether any of the guarantors is insolvent or beyond the court's jurisdiction before calculating respondent's fair share of the common liability, we reverse in part and remand.

## FACTS

Union Land X LLC (Union Land) is a limited liability company that was formed to purchase real property in Golden Valley. Union Land had four owners: Padun GV LLC (Padun), El-Lynlin LLC (El-Lynlin), Steven Hoyt, and Gonzalo Medina. Padun, Hoyt, and Medina each owned a 30% interest in Union Land, and El-Lynlin owned a 10% interest. Appellants Frank Dunbar and Michael Pagh owned 50% interests in

2

Padun.  Jim Winkels, Robert Foster, and respondent David Kroona each owned a one-third interest in El-Lynlin.

In June 2007, Union Land purchased the Golden Valley property using funds secured by a loan agreement with Associated Bank, which included a mortgage and a promissory note in the amount of $5,250,000.  At Associated Bank's request, the Union Land owners executed four separate but essentially identical[1] limited guaranty agreements, in which each individual guarantor guaranteed Union Land's obligations under the loan agreement up to $1,575,000.[2]  Padun and appellants signed one guaranty.  Hoyt signed a second guaranty.  Medina signed a third guaranty.  And El-Lynlin, Winkels, Foster, and respondent signed a fourth guaranty.

Each of the guaranties states:[3]

> Guarantor hereby absolutely and unconditionally guarantees the punctual payment and performance when due . . . of all obligations of [Union Land] now or hereafter existing under the [Loan] Agreement, the Note, the Mortgage, . . . and the other Loan Documents, whether for principal, interest, fees, expenses or otherwise (such obligations being the "Obligations"), and agrees to pay any and all reasonable expenses, including reasonable attorneys' fees, incurred by [Associated Bank] in collecting the Obligations and enforcing this Guaranty; provided however, the liability of Guarantor under this Guaranty shall be limited so that, except as hereinafter provided, [Associated Bank] may not collect from Guarantor more than One Million Five Hundred Seventy-Five

---

[1] The only substantive difference among the guaranties is that each guaranty identifies different parties as "Guarantor."

[2] The guaranties also provide that the guarantors' liability "shall be increased so that [Associated Bank] may collect from Guarantor up to one hundred percent (100%) of the Obligations" under certain circumstances, which are not applicable here.

[3] The two guaranties that were signed by multiple guarantors include additional language indicating that the guaranty is made on a joint and several basis.

3

Thousand Dollars ($1,575,000.00) plus interest, fees, and expenses payable… hereunder . . . .

In June 2009, Union Land defaulted, and Associated Bank foreclosed the mortgage. A $1,547,608.15 deficiency remained after the foreclosure sale. Associated Bank assigned all of its rights under the loan agreement, including its rights under the guaranties, to SB1 General Portfolio Owner LLC (SB1).[4]

In September 2010, SB1 commenced a collection action against the guarantors, seeking to recover the deficiency. SB1 moved for summary judgment in June 2011. The next month, Padun[5] and appellants settled with SB1, paying $150,000 in exchange for a release from liability. Although the written settlement agreement between SB1, appellants, and Padun acknowledges the other guarantors' liability to SB1, the agreement does not address appellants' potential liability to the other guarantors for contribution.

The district court granted summary judgment for SB1 in the collection action and ordered judgment, jointly and severally, against Medina, El-Lynlin, Winkels, Foster, and respondent in the amount of $1,547,608.15. The district court did not enter judgment against Padun and appellants because of their settlement agreement with SB1, or against Hoyt because he had filed for bankruptcy. After judgment was entered, respondent settled with SB1 for $400,000.

In April 2012, respondent initiated this contribution action against Padun and appellants, alleging that they were "liable to [him] in contribution for amounts [he] paid

[4] The guaranty states, "This Guaranty is a continuing guaranty and shall . . . inure to the benefit of and be enforceable by [Associated Bank] and its successors, transferees, and assigns."
[5] Padun is not a party to this appeal.

4

in excess of his fair share." Padun and appellants moved for summary judgment, arguing "(1) that there is no common liability between [respondent] and [appellants] and (2) that [respondent] did not bear a disproportionate share of any common burden." In opposing that motion, respondent argued that the district court should sua sponte grant summary judgment in his favor. The district court denied appellants' motion, reasoning that because "the Guaranties all applied to the loan from the Bank to Union Land and guaranteed, up to a limited amount, the performance of [Union Land's] obligations arising from the loan, there is, as a matter of law, common liability between the Guarantors." But the district court declined to enter summary judgment in respondent's favor because the issue was not properly before the district court and because additional issues had to be decided before appellants' liability for contribution, if any, could be determined.

Later, respondent moved for partial summary judgment declaring that he has a right to contribution as a matter of law. The district court granted the motion "insofar as [respondent] has a right of contribution against [appellants] if it is conclusively established that he made a $400,000 payment to [SB1]." The district court indicated that it would later determine whether respondent paid $400,000 to SB1, whether respondent paid more than his fair share of the common liability, and, if so, what portion of the overage respondent could recover from appellants.

In addressing those issues, Padun and appellants argued that the district court should exclude insolvent guarantors from the fair-share determination. The district court initially was persuaded by that argument and instructed the parties to submit evidence

5

and letter briefs regarding the guarantors' solvency. However, the district court ultimately concluded that the fair-share determination should include all nine guarantors regardless of solvency. Thus, the district court found that respondent made a $400,000 payment to SB1, that his fair share of the aggregate liability is $202,016.33, and that he therefore overpaid $197,983.67.[6] The district court concluded that the overpayment should be allocated equally between appellants and therefore granted judgment against each appellant in the amount of $98,991.83 plus prejudgment interest. The district court also granted judgment against appellants, jointly and severally, for costs and disbursements incurred in this action. This appeal follows.

## ISSUES

I.   Do appellants and respondent share a common liability for the purpose of contribution?

II.  Did respondent pay more than his fair share of the common liability?

III. Do any of appellants' remaining arguments warrant relief?

## ANALYSIS

Contribution is based on the "natural principle of equity that where the same burden is assumed equally by several, and one of them is compelled to discharge it, the others ought to contribute each his share, so as to preserve equality." *Young v. Shunk*, 30 Minn. 503, 505, 16 N.W. 402, 402 (1883). "The liability rests upon the implied promise between co-obligors [that] if one is compelled to discharge more than his share of the obligation, the others will respond to him for their proportionate share." *Dodge Cnty. v.*

---

[6] The district court's calculation is explained in section II of this opinion.

6

*Martin*, 271 Minn. 489, 494, 136 N.W.2d 652, 656 (1965); *see also Gugisberg v. Eckert*, 101 Minn. 116, 118, 111 N.W. 945, 946 (1907) ("The persons not paying, but being relieved from a positive liability by a payment made by others, who were bound with them, are held to be under an implied promise to contribute each his share to make the whole sum paid.").

"Contribution requires, first, a common liability of two or more actors to the injured party, and second, payment by one of the actors of more than its fair share of the common liability." *Brown v. Lee*, 859 N.W.2d 836, 840 (Minn. App. 2015) (quotation omitted), *review denied* (Minn. May 19, 2015). "Whether the right of contribution exists is a legal issue, which we review de novo." *Nuessmeier Elec., Inc. v. Weiss Mfg. Co.*, 632 N.W.2d 248, 251 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001).

The contribution claim in this case was decided on summary judgment. Summary judgment "shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). Appellate courts "review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761.

**I.**

We first address appellants' contention that respondent is not entitled to contribution because the parties do not share a common liability. Appellants argue that the parties do not share a common liability because they signed separate guaranties. But

> [p]ersons are co-sureties, so to give the right of contribution, when they are bound for the performance by the same principal of the same duty; and whether they become so at the same time or at different times, by one or by several instruments, and even that they are bound in different amounts, or that each is ignorant that the others are sureties, does not affect the relation nor the right.

*Young*, 30 Minn. at 505, 16 N.W. at 402; *see also Estate of Frantz v. Page*, 426 N.W.2d 894, 901 (Minn. App. 1988) ("The fact that the guaranties were executed as separate instruments makes no difference with respect to the guarantors' joint and several obligation."), *review denied* (Minn. Sept. 16, 1988).

Here, appellants and respondent were bound for the performance of the same duty by the same principal: Union Land's obligation to repay the loan from Associated Bank. Thus, the parties share a common liability even though they signed separate guaranties. *See id*. Moreover, the written settlement agreement between SB1 and appellants does not address the preexisting common liability among appellants and respondent, much less purport to limit appellants' potential liability stemming from that common liability. We therefore affirm the district court's determination that appellants and respondent share a common liability as a matter of law.

8

**II.**

We next address appellants' contention that the district court erred in calculating respondent's fair share of the common liability. We begin by deciding the appropriate standard of review. Respondent contends that the method used by the district court to determine respondent's fair share is reviewed for an abuse of discretion, arguing that "the district court used its considerable discretion in wielding [the] equitable [contribution] doctrine to fashion the parties' 'fair shares' of their common liability." Because the fair-share determination is used to establish an element of contribution, we disagree that the district court's methodology is reviewed for an abuse of discretion. *See Brown*, 859 N.W.2d at 840 (listing, as an element of contribution, "payment by one of the actors of more than its fair share of common liability" (quotation omitted)). Whether the elements of contribution are established is reviewed de novo. *See Nuessmeier*, 632 N.W.2d at 251. We therefore review de novo whether the district court properly calculated respondent's fair share of the common liability.

When calculating respondent's fair share, the district court relied on the Restatement (Third) of Suretyship and Guaranty, which provides that "a cosurety's contributive share is the aggregate liability of the cosureties to the obligee divided by the number of cosureties." Restatement (Third) of Suretyship and Guaranty § 57(1) (1996). Appellants assign several errors to the district court's application of the Restatement equation. We address each component of the equation, as well as the assigned errors, in turn.

9

*Aggregate Liability*

Appellants contend that the district court erred in determining the aggregate liability, that is, the dividend in the Restatement equation. The district court determined that the aggregate liability is $1,818,147.01, basing that figure on the amount of the initial judgment in the collection action, plus interest and collection costs. Appellants argue, without citation to relevant authority, that "[t]he district court erred in holding that the [dividend] was an amount not actually received by SB1" and that "[t]here is no basis in the record to support the [dividend] used by the district court in determining fair share." We are not persuaded.

The district court's reliance on the collection judgment when determining the aggregate liability is consistent with our decision in *Senn v. Youngstedt*, 589 N.W.2d 314 (Minn. App. 1999), *review denied* (Minn. May 18, 1999). In *Senn*, judgment was entered against Senn and Youngstedt in the amount of $581,751.19. 589 N.W.2d at 315. The judgment was later amended to include interest and attorney fees of approximately $130,000. *Id.* Senn paid $344,583 toward the judgment, and Youngstedt paid $201,076. *Id.* Senn commenced a contribution action against Youngstedt. *Id.* Youngstedt opposed contribution, arguing that the parties' common liability should be based on the amended judgment and that Senn had not paid more than half of that judgment. *Id*. at 316. This court rejected Youngstedt's argument noting that "[t]he original judgment debt is a fixed, common liability" and that it "best represents the parties' common liability." *Id.*

In this case, the common liability stems from the loan guaranties, under which the guarantors are liable for the unpaid balance of the loan, plus interest and costs. Thus, the

10

collection judgment for SB1, which is based on the unpaid loan balance, plus interest and costs, best represents the parties' common liability. We therefore discern no error in the district court's decision to base its aggregate-liability determination on the collection judgment, plus interest and costs, consistent with the guaranties. *White v. Minn. Dep't of Nat. Res.*, 567 N.W.2d 724, 734 (Minn. App. 1997) (stating that error is never presumed on appeal), *review denied* (Minn. Oct. 31, 1997).

Appellants also argue that the district court erred by including "legal fees, costs, and interest which arose after the [collection] court's summary judgment ruling." But under the guaranty, appellants agreed "to pay any and all reasonable expenses, including reasonable attorneys' fees, incurred by [Associated Bank] in collecting the Obligations and enforcing this Guaranty." Appellants also agreed that the "Guaranty is a continuing guaranty and shall . . . inure to the benefit of and be enforceable by [Associated Bank] and its successors, transferees, and assigns." Moreover, appellants do not provide legal authority or argument to show that the district court erred by including the challenged costs, fees, and interest. We do not presume error on appeal. *See id.* And appellants fail to show that the district court erred in its inclusion of fees, costs, and interest in its aggregate-liability determination.

*Number of Guarantors*

Appellants also contend that the district court erred in calculating the number of guarantors to be used as the divisor in the Restatement's contributive-share equation. The district court used nine as the divisor because there are nine guarantors. The district court divided the aggregate liability of $1,818,147.01 by nine guarantors and determined

11

that respondent's fair share of the common liability is $202,016.33. Next, the district court determined that respondent paid more than his fair share by subtracting respondent's fair-share amount from respondent's $400,000 settlement payment, resulting in an overpayment of $197,983.67.

Appellants argue that the correct divisor is four, based on the number of guaranties that were signed. As support, they rely on a Restatement comment, which states that "[w]here there are different groups of cosureties, each group is considered as a unit in determining the amount of contribution." Restatement (Third) of Suretyship and Guaranty § 57 cmt. e. But in this case, liability under the guaranties is assigned individually to each guarantor, and not to any guarantor group. Padun, appellants, Hoyt, Medina, El-Lynlin, Winkels, Foster, and respondent each signed a guaranty as a guarantor, promising to guarantee Union Land's obligations under the loan agreement up to $1,575,000. Because each of the nine guarantors is individually bound by the respective guaranty, treating several of them as one unit for purposes of the fair-share calculation ignores the plain language of the guaranties. The divisor in this case is properly based on the number of individual guarantors, and not on the number of guaranties that were signed.

Appellants also argue that the district court erred by including potentially insolvent or dissolved guarantors in the denominator. That argument has merit. In *Frantz*, this court held that the district court erred by rendering a contribution judgment without first determining whether the contribution defendants were able to respond to the

judgment. 426 N.W.2d at 902. We quoted and emphasized the following comment from the Restatement of Restitution:

> If one or more of a number of co-obligors or co-sureties should become insolvent or leave the jurisdiction, one of the others who makes a payment is entitled by a proceeding in equity *to have contribution from the others as if the insolvent or absent persons had originally not participated*.

*Id.* (quoting Restatement of Restitution § 85 cmt. h (1937)). We vacated the judgment in part and instructed the district court to "reopen the record to take evidence on the ability of each of the guarantors to respond to the debt and then to apply the law of contribution in determining . . . proportionate liability." *Id.*

Here, the district court chose not to follow *Frantz* and the Restatement because doing so would "harm [respondent] (i.e., the party seeking contribution)." The district court explained the potential harm as follows: "(1) the exclusion of any insolvent co-guarantors would increase [respondent's] fair share of the aggregate liability, and (2) an increase in [respondent's] fair share would reduce the differential between [his] $400,000 payment and his fair share of the aggregate liability and thereby reduce his recovery from [appellants]." The district court did not address or explain why respondent should not share in the burden that will result to the remaining guarantors if one or more of the guarantors is insolvent or beyond the court's jurisdiction.

Minnesota caselaw emphasizes that the goal of contribution is to allocate common liability on an equal, pro-rata basis. *See Young*, 30 Minn. at 505, 16 N.W. at 402 (explaining that contribution is based on the principle of preserving equality); *Frantz*, 426 N.W.2d at 902 ("Generally, a coguarantor is not liable for more than his pro-rata share of

13

the debt . . . ."). "[W]here the same burden is assumed equally by several, and one of them is compelled to discharge it, the others ought to contribute each his share, so as to preserve equality." *Young*, 30 Minn. at 505, 16 N.W. at 402. Accordingly, all available common obligors should absorb the obligation of any insolvent or unavailable guarantors. The district court therefore erred by calculating respondent's fair share of the common liability based on all nine guarantors, regardless of their solvency or availability.

The record suggests that three of the guarantors may be insolvent or dissolved. The number of available guarantors must accurately be determined to correctly calculate respondent's fair share of the common liability and to determine whether he paid more than his fair share. Given an aggregate liability of $1,818,147.01, if only six guarantors are available, respondent's fair share would be $303,024.50 and his overpayment would be $96,975.50. If that overpayment were allocated equally between appellants, each appellant would contribute $48,487.75, which is less than half of their obligations under the current judgments. If only four guarantors are available, respondent's fair share would be $454,536.75, and he would not have paid more than his fair share. In sum, the district court's failure to properly calculate respondent's fair share warrants reversal.

Because there is a genuine issue of material fact regarding the number of guarantors that are available to contribute to the common liability and, therefore, whether respondent paid more than his fair share, we reverse the judgments against appellants and remand for a determination regarding how many of the nine guarantors are available to contribute to the common aggregate liability. Once that determination is made, the district court should calculate respondent's fair share by dividing the aggregate liability

14

($1,818,147.01) by the number of solvent and available guarantors. If respondent's $400,000 payment to SB1 exceeds that amount, the second element of respondent's contribution claim will be established.

As to appellants' argument that the district court erred by allocating respondent's overpayment entirely to appellants, instead of pro rata among all available guarantors, we simply note that so long as equitable relief is available, decisions regarding whether to grant equitable relief and how to fashion an equitable remedy are entrusted to the district court's discretion. *See SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 860-61 (Minn. 2011) (explaining that whether equitable relief is available is reviewed de novo and that if it is available, whether and how to award equitable relief is reviewed for an abuse of discretion). However, Minnesota caselaw provides that the goal of contribution is to allocate common liability on an equal, pro-rata basis. *See Young*, 30 Minn. at 505, 16 N.W. at 402. The district court should be guided by that principle on remand.[7]

### III.

Lastly, we address whether appellants' remaining arguments establish reversible error. Appellants contend that respondent is not entitled to contribution because SB1 has not fully discharged the debt, respondent's settlement with SB1 did not discharge a common liability, and there is a fact issue regarding whether the parties made express or

---

[7] Nothing in this opinion prohibits a motion to join other guarantors on remand. *See* Minn. R. Civ. P. 14.01 (permitting defendants to bring in a third party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff").

15

implied agreements to limit their contribution rights.  We address each of the arguments in turn.

*Discharge of Less Than the Entire Debt*

Appellants argue that respondent's contribution action is "not ripe for adjudication" because SB1 has not fully discharged the debt owing from the Union Land loan.  But the rule in Minnesota is clear:  "A contribution action is ripe when a co-debtor has paid more than his proportionate share of an original judgment debt."  *Senn*, 589 N.W.2d at 315.  In *Senn,* this court explained that "it is proper to maintain a [contribution] cause of action upon paying more than a proportionate share of one or more installments of a debt."  *Id*. at 316.  The circumstances in *Senn* were as follows:  judgment of $581,751 was entered against Senn and Youngstedt, Senn contributed $344,583 to the judgment, and Youngstedt contributed $201,076.  *Id*. at 315.  At the time of Senn's contribution action, approximately $36,092 of the original judgment debt remained unpaid.  Nonetheless, we held that it was "proper to initiate a contribution action under these facts."  *Id*. at 316.

Despite our holding in *Senn*, appellants contend that "Minnesota follows the principle that a guarantor may not seek contribution from co-guarantors until the debt is discharged in full."  Appellants do not cite a precedential contribution case as support for that contention.  Instead, they rely on Minnesota's subrogation caselaw, as well as contribution cases from other jurisdictions.  That reliance is misplaced.

Subrogation and contribution are distinct doctrines.  *See Hermeling v. Minn. Fire & Cas. Co.*, 548 N.W.2d 270, 273 & n.1 (Minn. 1996) (distinguishing subrogation and

16

contribution). "[T]he general rule is that subrogation, whether arising from equity or contract, will be denied prior to full recovery." *Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn. 1983). Contribution, on the other hand, only requires payment of more than one's fair share. *See Brown*, 859 N.W.2d at 840. We therefore reject appellant's suggestion that we use subrogation law to determine whether respondent's contribution claim was ripe. Such an application would conflict with the clear rule of law stated in *Senn*. We also decline to adopt a new rule of law—based on nonbinding decisions from other jurisdictions—requiring that a debt be fully discharged before a party may seek contribution. *See Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 861 (Minn. 1984) (noting that decisions from foreign jurisdictions are not binding as authority). This court's holding that "[a] contribution action is ripe when a co-debtor has paid more than his proportionate share of an original judgment debt" governs in this case. *Senn*, 589 N.W.2d at 315.

*Failure to Discharge a Common Liability*

Appellants argue that respondent does not have a right to contribution because by settling with SB1, respondent discharged only his own liability, and not any common liability.

The elements of contribution are "first, a common liability of two or more actors to the injured party, and second, payment by one of the actors of more than its fair share of the common liability." *Brown*, 859 N.W.2d at 840 (quotation omitted). Equity bases the duty to contribute on "the benefit of being relieved of an obligation." *Am. Auto. Ins. Co. v. Molling*, 239 Minn. 74, 78, 57 N.W.2d 847, 850 (1953). As reflected in the

17

following quote, when a party pays more than his fair share of a common liability, he satisfies another party's obligation:

> The general rule is that, where two or more persons are jointly, or jointly and severally, bound to pay a sum of money, and one or more of them pays the whole, *or more than his or their share, and thereby relieves the others from their liability,* those paying may recover from those not paying the aliquot proportion which they ought to pay. *The persons not paying, but being relieved from a positive liability by a payment made by others,* who were bound with them, are held to be under an implied promise to contribute each his share to make the whole sum paid.

*Gugisberg*, 101 Minn. at 118, 111 N.W. at 946 (emphasis added). In sum, if respondent establishes that he paid more than his fair share, he will adequately establish that he relieved appellants of at least a portion of the common obligation.

Appellants concede that they "could not find a Minnesota case ruling against the party seeking contribution, such as respondent, for its failure to discharge a common liability, as appellants assert is the present fact situation." Appellants therefore rely on *Thomas v. Jacobs*, 751 A.2d 732, 734 (R.I. 2000). Appellant's reliance is misplaced. First, the case is from another jurisdiction, and it is not binding on this court. *See Mahowald*, 344 N.W.2d at 861. Second, *Thomas* is not on point.

In *Thomas*, two co-guarantors were jointly and severally liable for outstanding bank loans in the amount of $744,241.35. 751 A.2d at 733. Each of the guarantors negotiated a settlement with the bank: one guarantor negotiated a $175,000 settlement, and the other guarantor negotiated a $75,000 settlement. *Id*. Each settlement agreement

18

released only the settling guarantor, and not the other guarantor. *Id.* The guarantor who settled for $175,000 sought contribution from the other guarantor, which was denied. *Id.*

On appeal, the Supreme Court of Rhode Island noted that "[t]he single issue before us is whether plaintiff is entitled to contribution from his co-guarantor when plaintiff has paid less than half the total amount owed and has secured a release in his name alone." *Id.* at 734. The supreme court decided that issue as follows:

> With respect to contribution, the general rule is that one guarantor is entitled to contribution from his or her co-guarantor(s) only when he or she has discharged more than his or her proportionate share. Thus, our rule comports with the formulation set forth in "Time when Right to Contribution Arises," *Restatement of Restitution,* § 82(1), which we formally adopt at this time: "A person . . . is entitled to contribution from another when, and only when, he has discharged more than his proportionate share." Because neither party in this case paid more than half the outstanding debt of more than $700,000, neither was entitled to contribution from the other party on these facts.

*Id.* (citation omitted) (footnote omitted).

However, the Supreme Court of Rhode Island noted that

> The *Restatement of Restitution*, § 82, cmt. b (1937), permits an exception that allows contribution among co-guarantors when one co-guarantor *has paid less than his or her fair share of the debt and has secured a full release from the creditor for any other co-guarantor(s).* Here, plaintiff did not secure a full release for defendant. Thus, according to the exception outlined in the *Restatement*, plaintiff was not entitled to contribution.

*Id.* n.1.

Appellants urge this court to "adopt the *Thomas* holding in this case." Appellants argue that similar to the facts in *Thomas,* "[r]espondent's settlement agreement did not

release [a]ppellants, or any other guarantor, nor did it discharge the entire debt owed by all the guarantors to SB1," and that under *Thomas*, "[r]espondent's negotiated settlement of only his own liability . . . without discharging any of [a]ppellant's liability negates his contribution claim." Appellants' argument fails to recognize that the *Thomas* decision ultimately was based on the fact that neither party "paid more than half the outstanding debt of more than $700,000," that is, neither guarantor paid more than his fair share. *Id.* at 734. The only reason that the *Thomas* court considered whether either guarantor's settlement agreement secured a release of the other guarantor was to determine whether the exception to the general rule requiring payment of more than one's fair share applied. *See id.*

Appellants seem to construe *Thomas* as holding that a settling obligor cannot relieve a co-obligor from a common liability by paying more than his fair share of the common liability under a settlement agreement unless the settling obligor also secures a release from the creditor on behalf of the co-obligor. That simply is not the holding of *Thomas*. Thus, *Thomas* is neither precedential nor persuasive. Because appellants have not provided any precedential or persuasive authority suggesting that respondent must establish any circumstance other than the existence of a common liability and payment of more than his fair share of the common liability, we reject appellants' argument that respondent did not adequately discharge a common liability for the purpose of his contribution claim.

*Agreements to Limit Contribution*

Appellants contend that even if respondent has a right of contribution, there is a factual dispute regarding express and implied agreements among the parties regarding limitations on contribution rights and that they "are entitled to argue their interpretation" of the guaranty language to a trier of fact. Appellants argue that the express language of the guaranties limits contribution rights and prohibits contribution among the guarantor groups. Appellants also argue that there was an implied agreement between the guarantors that similarly limits contribution rights. Appellants rely on Restatement (Third) of Suretyship and Guaranty § 57(1), cmt. b, which provides that "[i]f the co-sureties agree to determine their contributive shares by a different formula . . . , their agreement controls."

Contrary to appellants' argument, the express language of the guaranties does not limit contribution rights. The guaranties mention contribution only in the subrogation section, which provides that the guarantors waive any contribution claim against Union Land. If the language of a contract is unambiguous, parol evidence regarding the parties' intent is not admissible, and courts must enforce the plain language. *See Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010) ("When the language is clear and unambiguous, we enforce the agreement of the parties as expressed in the language of the contract."); *Nw. Bank Minn., N.A. v. Midwestern Mach. Co.*, 481 N.W.2d 875, 881 (Minn. App. 1992) ("The general rule is that where the terms of a contract are clear and unambiguous, parol evidence will not be allowed to alter the terms of that contract."), *review denied* (Minn. May 15, 1992). Appellants do not argue that the guaranties are

21

ambiguous. Thus, there is no basis to consider extrinsic evidence regarding appellants' interpretation of the guaranties.

Appellants' argument regarding the purported implied agreement is also unavailing. Appellants assert that prior to signing the guaranties, the guarantors discussed and agreed to negotiate four separate guaranties "for the purpose of avoiding any common liability or contribution." Once again, appellants do not argue that the guaranties are ambiguous or explain why they should be allowed to present parol evidence regarding the alleged discussions to contradict the plain language of the guaranties, which does not limit contribution rights among the guarantors. If, as appellants argue, the guarantors intended to limit their contribution rights, they could have included such a limitation in the guaranty. *See Frantz,* 426 N.W.2d at 901 ("The guarantors could have agreed to share the possible burden on some basis other than that of strict proportionate contribution." (quotation omitted)).

## D E C I S I O N

Because respondent and appellants were bound for the performance of the same duty by the same principal, the district court correctly ruled that they share a common liability as a matter of law, and we affirm that ruling. But because the district court failed to determine whether any of the guarantors are insolvent or beyond the court's jurisdiction and, if so, to exclude them from the fair-share calculation, the district court erred in calculating respondent's fair share of the common liability. As a result, the district court erred in determining that respondent paid more than his fair share of the common liability and that he therefore is entitled to contribution. Because there is a

genuine issue of material fact regarding the status of the guarantors, we reverse the judgments against appellants and remand for a fair-share calculation that does not include guarantors who are insolvent or beyond the court's jurisdiction. If the district court determines that respondent has paid more than his fair share, an award of equitable relief is entrusted to the district court's discretion.

**Affirmed in part, reversed in part, and remanded.**