*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1250**

Fulisha Fulmer,
Relator,

vs.

Meridian Behavioral Health, LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed February 6, 2017
Affirmed
Larkin, Judge**

Department of Employment and Economic Development
File No. 34624174-3

Fulisha Fulmer, Minneapolis, Minnesota (pro se relator)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Relator, pro se, challenges an unemployment-law judge's determination that she is ineligible for unemployment benefits because she was terminated for employment misconduct. We affirm.

**FACTS**

Relator Fulisha Fulmer worked for respondent Meridian Behavioral Health LLC (MBH) from April 2015 to April 2016. Fulmer worked as a recovery specialist at an MBH-operated chemical-dependency center. On April 24, 2016, a coworker and licensed practical nurse, E.A., observed that Fulmer had "[b]loodshot watery eyes, unkempt grooming, repetitious rambling, disheveled clothing, [a] distinct aroma [of marijuana], behavioral indicators, extreme fatigue, poor concentration," an "inability to concentrate, [a] lackadaisical apathetic attitude, lack of motivation, [and] decreased alertness."

E.A. contacted Fulmer's supervisor, who in turn contacted the program director, who then contacted the human-resources director and completed a "reasonable suspicion" form. The program director determined a "reasonable suspicion test"—a chemical drug test—was warranted. The program director told Fulmer that she could refuse the test and provided a form for her signature, which noted that refusal would be grounds for disciplinary action up to and including termination. Fulmer refused to take the test. MBH suspended Fulmer based on her refusal. Human resources later decided that Fulmer should be terminated for employment misconduct and informed Fulmer of its decision by phone.

Fulmer applied to respondent Minnesota Department of Employment and Economic Development (DEED) for unemployment benefits, and DEED determined that she was ineligible for benefits. Fulmer appealed that determination, and an unemployment-law judge (ULJ) conducted a telephonic hearing regarding the determination. Fulmer and an MBH human-resources representative testified at the hearing. Fulmer testified that she did not "have a valuable . . . reason to refuse" the test. Fulmer said that she refused the test because she "was very embarrassed" and "didn't like the way the situation went." The ULJ asked Fulmer if her refusal had "anything to do with any sort of mental illness specifically." Fulmer responded, "No it just has to do with the fact how it happened you know, it was just really unprofessional, unethical the way it happened and that's the decision I made and you know I have to live with that decision."

The ULJ found that MBH's request that Fulmer take a chemical test was reasonable. The ULJ noted that the director "could have approached Fulmer in a more private manner." But the ULJ found that, even though the director "approached Fulmer in front of clients, in an accusatory manner, [it] did not justify Fulmer's refusal. Fulmer's actions displayed a serious violation of the standards of behavior [her employer] had a right to reasonably expect." The ULJ determined that Fulmer's test refusal constituted employment misconduct and that Fulmer was therefore ineligible for benefits.

Fulmer requested reconsideration, providing information about her personal circumstances and addressing testimony by MBH's human-resources representative on which the ULJ did not rely. The ULJ affirmed his prior decision. The ULJ reasoned that

3

"Fulmer's personal circumstances do not have any bearing on whether her refusal to submit to a drug test was employment misconduct" and therefore did not change the outcome.

Fulmer appeals to this court by writ of certiorari.

**D E C I S I O N**

An employee who is discharged for employment misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2016). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2016). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether an employee committed employment misconduct is a mixed question of fact and law. *Id.* Whether a particular act constitutes employment misconduct is a question of law, which we review de novo. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997).

This court may reverse or modify a ULJ's decision "if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision" are "unsupported by substantial evidence in view of the entire record as submitted" or "affected by other error of law." Minn. Stat. § 268.105, subd. 7(d) (2016). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Minneapolis Van & Warehouse Co. v. St. Paul*

4

*Terminal Warehouse Co.*, 288 Minn. 294, 299, 180 N.W.2d 175, 178 (1970) (quotations omitted).

This court does not presume error on appeal. *Kroona v. Dunbar*, 868 N.W.2d 728, 735 (Minn. App. 2015). "[T]he burden of showing error rests upon the one who relies upon it." *White v. Minn. Dep't of Nat. Res.*, 567 N.W.2d 724, 734 (Minn. App. 1997) (quotations omitted), *review denied* (Minn. Oct. 31, 1997). Moreover, an assignment of error in a brief based on mere assertion and not supported by argument or authority is forfeited unless prejudicial error is obvious on mere inspection. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997). A court traditionally accords some latitude and consideration to a pro se litigant, such as Fulmer. *Liptak v. State ex rel. City of New Hope*, 340 N.W.2d 366, 367 (Minn. App. 1983). Nonetheless, pro se parties generally are held to the same standards as attorneys. *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001).

Fulmer's one-page brief and reply brief describe her frustration with the ULJ's determination and with the work environment at MBH generally. She does not specifically assign error to the ULJ's eligibility determination, and she does not offer legal arguments supported by authority. She generally asserts that the ULJ's decision was unfair and that her refusal "is not misconduct." She explains that she liked her job and did it well, despite personal circumstances that sometimes interfered with her performance. But Fulmer's briefs do not suggest a procedural error rendering the hearing unfair. To the extent that Fulmer claims that the ULJ's decision is substantively unfair, we note that there is no equitable right to employment benefits. *See* Minn. Stat. § 268.069, subd. 3 (2016).

Fulmer asserts that she has been diagnosed with ADHD and argues that she has "the documents to prove that [her] ADHD causes [her] to make impulsive decisions. [She is] now on medications and this will not become a problem in the future." But Fulmer did not present evidence in the proceedings before the ULJ to support this assertion. In fact, when the ULJ asked Fulmer whether her refusal was rooted in mental-health issues, she said, "No." We do not consider issues that were not raised before the ULJ. *See Eley v. Southshore Investments, Inc.*, 845 N.W.2d 216, 222 (Minn. App. 2014) (relying on *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988), in deciding not to consider issues not raised before the ULJ). To the extent that Fulmer's briefs could suggest that the ULJ erred because her refusal stemmed from mental-health issues, the assertion of error is not properly before this court, and we do not consider it.

As to the ULJ's misconduct determination, failure to comply with an employer's reasonable request generally constitutes employment misconduct "if the request of the employer is reasonable and does not impose an unreasonable burden on the employee." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004). If an employer's drug-testing policy complies with Minnesota regulations, the employer "may request or require an employee to undergo drug and alcohol testing if the employer has a reasonable suspicion that the employee . . . is under the influence of drugs or alcohol." Minn. Stat. § 181.951, subds. 1, 5 (2016). Fulmer does not argue that MBH's request for testing was unreasonable. Indeed, it is reasonable for MBH to use chemical testing to ensure that its chemical-dependency-recovery employees are not themselves struggling with chemical-use issues.

6

Fulmer testified that she refused the test because she was "very embarrassed and . . . felt you know icky" about the way in which it was requested, she "didn't like the way the situation went," and she felt it "was really unprofessional [and] unethical." In fact, Fulmer's reply brief states, "I am not saying it was okay for me to refuse the test[.]" Under the circumstances, Fulmer's refusal to submit to the chemical test was an intentional and serious violation of the standard of behavior reasonably expected by MBH. It therefore constitutes employment misconduct.

In sum, the ULJ did not err by determining that Fulmer's test refusal constituted employment misconduct. Because Fulmer was terminated for employment misconduct, the ULJ did not err by determining that she is ineligible for unemployment benefits.

**Affirmed.**